JULIA BLANCHE PECK, Respondent, *v.* THEODORE G. PECK et al., Appellants.

P. died intestate, leaving E., plaintiff's assignor and the defendants herein his heirs-at-law, and leaving certain real estate. E. was at the time insolvent and judgments to a large amount were outstanding against him; his interest in said real estate was sold on an execution against him and bid in by M. under an agreement between him and E. that the latter might, at any time thereafter, redeem by paying the sum bid with interest. Differences having arisen between E. and the other heirs, an agreement for a settlement was made in February, 1883, by which, among other things, it was agreed that E. and M. should take up and pay the judgments against E. Immediately after this E. confessed a judgment to defendant G. under an agreement that it was to be used only as a lien, and was not to be enforced in any event until May thereafter. G., however, in April, by virtue of his judgment, redeemed the interest of E. by paying the sheriff the amount of M.'s bid, and received a conveyance from the sheriff. In an action for an accounting between the parties and partition, *held,* that G., by his redemption, did not obtain absolute title to E's interest, but held it simply in trust for him or his assigns, subject to the payment of the amount paid to redeem and of G.'s judgment, with interest on both; and this, although at the time of the redemption the twelve months allowed for E., as the judgment-debtor, to redeem had expired; that he still had an interest and also a right to redeem under his agreement with M., which was valid; also, that the agreement between E. and G., in pursuance of which the judgment was confessed, was valid.

Defendant T., under the agreement between the parties, received powers of attorney to manage and control the property; after these had been revoked on the part of E., but while T., was still, to some extent, in possession and was receiving the rents, issues and profits, he, with full knowledge of the circumstances above stated, purchased a judgment against E., the amount whereof was about $6,600, for $3,000. T. had promised E. that he would protect the latter's interest in the estate. *Held,* that T. was not entitled to be paid the full amount of the judgment, but simply the amount paid by him with interest; that notwithstanding the revocation

of the power of attorney, his relations with E. continued to be fiduciary in their nature.

At the time of the decease of P. there was a mortgage upon the premises, which T. purchased for $10,000 and took an assignment to himself, the principal and interest of which amounted to over $16,000. It did not appear that at the time of the purchase there was any intention on the part of the mortgagee to foreclose, or that there was any immediate and pressing necessity to take care of the mortgage. *Held,* that T. was not entitled to hold the mortgage for its face, but only for the amount paid therefor, with interest, and he had simply the right to require of his co-tenants to contribute their share of this amount;.also, that the failure of E., after knowledge of the purchase and of T.'s claim to hold the mortgage for the full amount, to contribute or offer to contribute his share of the purchase-price, did not, under the circumstances, entitle T. to enforce the mortgage for its full amount.

*Streeter* v. *Shultz* (45 Hun, 406); *Mandeville* v. *Solomon* (39 Cal. 125) distinguished.

(Argued May 4, 1888; decided June 3, 1888.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made May 13, 1886, which denied a motion, made under section 1001 of the Code of Civil Procedure, for a new trial and affirmed an interlocutory judgment herein.

This action was brought for an accounting and partition.

The material facts are stated in the opinion.

*C. Frost,* for appellants. The defendant Theodore had the right to hold the mortgage which he purchased for $10,000, and upon which there was due between $16,000 and $17,000, for the full amount thereof. (*Wells* v. *Chapman,* 4 Sand. Ch. 312.) Ernest could not claim the right to share in the benefit of this purchase, by Theodore, of the mortgage, without immediately, on being informed of the purchase and of the amount paid, and that he claimed the full amount due on the bond and mortgage, offering to pay or contribute his proportionate share of the amount paid. (4 Sand. Ch. 312; 13 Barb. 561; *Britton* v. *Hardy,* 20 Ark. 381; *Lee* v. *Fox,* 6 Dana [Ky.), 176; *Mandeville* v. *Solomon,* 39 Cal. 125;

*Blodgett* v. *Hildreth*, 8 Allen [Mass.] 188; *Rothwell* v. *Dewees*, 2 Black [U. S.] 613, 618, 619; *Van Horn* v. *Fowler*, 5 Johns. Ch. 407; *Streeter* v. *Shultz*, 45 Hun, 406.)

*L. E. Chittenden* for respondent. The co-tenants, this plaintiff and the defendants, are, upon contribution, entitled to share equally in any advantage that was gained by the purchase of the George Gordon mortgage by the defendant, Theodore G. Peck, and said incumbrance in the hands of Theodore G. Peck or the defendants cannot be used in any manner to the disadvantage of this plaintiff. (*Rothwell* v. *Dewees*, 2 Black [U. S.], 613; *Graham* v. *Luddington*, 19 Hun, 246, 211 *n.*; *Van Horn* v. *Fonda*, 5 Johns. Ch. 407; *Ten Eyck* v. *Craig*, 62 N. Y. 418.) This agreement between Ernest H. Peck and Gordon Peck, that the judgment used for the purposes of redemption having been confessed upon the agreement and condition that it would not be used, or in any way enforced against the judgment-debtor till the month of May following the confession, which was long after the time within which a judgment-creditor could redeem under the statute, was valid and binding, and a title obtained by means of a judgment so procured, especially when by a co-tenant and brother of the debtor, will be held invalid and of no effect. (*Wood* v. *Rabe*, 96 N. Y., 414; *Graffam* v. *Burgess*, 117 U. S. 180.) The interest in the estate under the sale on execution of Schmidtz judgment was the interest of Ernest Peck, plaintiff's assignor, and not of Morrell. (*Wood* v. *Rabe*, 96 N. Y. 414.)

PECKHAM, J. The learned counsel for the appellants has, with a most commendable desire to bring to an early termination this unfortunate litigation, waived all his exceptions taken upon the trial which do not directly bear upon the merits of the important matters in dispute between the parties, and both counsel have united in submitting for our determination the three main subjects of dispute upon which the parties are wholly unable to agree.

1. The first question that arises is in regard to what rights Gordon Peck obtained by the redemption under the judgment confessed by Ernest, the plaintiff's assignor, to him in March, 1883. A statement of the more important facts upon which the question arises is necessary here. In 1881, John Peck, of Haverstraw, died intestate, leaving considerable real and personal property, subject to mortgages and other liens. His affairs were left in considerable confusion, and great difficulty was necessarily experienced in closing them up. His son Ernest, who is the husband and assignor of the plaintiff, was insolvent and had judgments to a large amount entered up against him. Immediately upon the father's death Ernest and the other sons got into difficulties and disputes in regard to the settlement of the estate, and as the other heirs remained on the homestead, and Ernest, with his wife and children, lived away, the difficulties and disputes did not terminate.

On January 4, 1882, while the disputes still existed and the estate was unsettled, the whole interest of Ernest was sold on an execution issued upon a judgment against him, obtained by one Schmidtz for $244. Thomas Morrell, the father-in-law of Ernest, bid in the property for that sum under an agreement with him that he might, at any time thereafter, redeem his interest and receive it back by paying the above amount and interest. The differences continued between the brothers in regard to the settlement of the estate and the various claims made by them in regard thereto, when, in the fall of 1882, the counsel for the respective parties consulted together, and it was finally understood between them, and ratified by their respective clients, that all matters of difference should be settled by an agreement between the counsel which should be carried out by their clients. Numerous meetings of counsel were had, and, on February 21, 1883, an agreement had substantially been come to between them on most of the matters at issue. The fact of the counsel having substantially arrived at an agreement at a meeting between them on or about February 21, 1883, was known by the brothers Ernest, Theodore and Gordon almost immediately, and soon thereafter by

Morrell; and it was fully understood that Ernest and Morrell, as part of the settlement, should take up and pay the judgments against Ernest, which were thus to form no obstacle to the immediate completion of the settlement, and, of course, neither of the two latter had any suspicion that any effort would be made in the meantime, or at all, to enforce such judgments, or to obtain control of them by the brothers for any purpose whatever; and this must have been understood by the brothers.

Immediately after this meeting on February twenty-first, Gordon met and had a conversation with Ernest, and asked him for a confession of judgment to secure him for the debt Ernest owed him of about $100, for something wholly unconnected with the estate. Ernest told him he had no money and could not pay his debts until he got his dues from the estate, and he would not confess any judgment if it was to be enforced against him before such settlement. Finally, Ernest consented to give such a judgment, provided it was to be used only as a lien and not to be enforced, in any event, before May first following; and under such positive agreement on the part of Gordon, Ernest subsequently, and on the nineteenth of March, sent the confession of judgment to a lawyer at Haverstraw, who delivered it to Gordon. On the 3d of April, 1883, Gordon docketed this judgment, and with his brother Theodore went to the sheriff's office and, by virtue of this judgment, redeemed the interest of Ernest from the sale under the Schmidtz judgment, and paid to the sheriff the amount of Morrell's bid and interest, and on the fourth of April the sheriff conveyed to Gordon all the interest of Ernest in the homestead, by deed duly delivered which Gordon had recorded. Theodore was present at the time of the redemption and had full knowledge of it and of the delivery and receipt of the deed. Ernest relied on Gordon's promise not to enforce the judgment, and both he and Morrell, in good faith, believed that all the matters between the heirs had been settled, and by reason thereof neither took any steps or made any arrange-

ments to secure or protect Ernest's interests against the judg-
ment of Gordon or the other judgments against Ernest.

I do not pretend to have stated all the facts in this case
relating to this special subject, but only those which I think
are sufficient to make the question to be decided intelligible.
That question is, can Gordon maintain his claim that by this
redemption he has succeeded in obtaining all the interest of
Ernest in the homestead, and that he is now the absolute
owner thereof? We do not think he can. We think it
would be a fraud upon Ernest to permit it, and we do not
know of any rule of law or equity which prevents a court
from so declaring.

We think the meaning of the evidence upon which the
finding of the court is based, as to the terms upon which the
judgment was confessed, is that the defendant Gordon was to
have his judgment as a security for his debt, and it was not
to be enforced in any event until May first ; and that if any·
thing occurred in the meantime rendering it necessary for
Gordon to act, in order to keep his judgment alive, he should
do no more than the occasion called for, and the effect
should be nothing more than to keep it alive as a security.
We think the redemption under it and the claim to thereby
retain the whole interest of Ernest in the estate, operates with
great injustice upon Ernest, and is, in effect, a gross fraud upon
him. It is true, as stated by appellants' counsel, that at the
time of the redemption the right of Ernest to redeem under
the statute from the sale on the Schmidtz judgment had
terminated with the expiration of the year from January 4,
1882, but he still had an interest in the premises and the title
thereto remained in him until the expiration of the fifteen
months from the time of sale. During this three months he
could still confess a judgment which would be a lien upon his
interest, or he could mortgage it and the judgment-creditor or
mortgagee could redeem. (See cases cited in opinion of
Andrews, J., in *Wood* v. *Rabe,* 96 N. Y. 414, 423, 424.) In
addition to this, however, Ernest had his right to redeem
under his agreement with Morrell, which was valid. (*Ryan*

v. *Dox*, 34 N. Y. 307.) As he had an interest in the estate which was sold under the Schmidtz judgment the agreement can be upheld under the authority of the above case, which, although distinguished and limited in the subsequent case of *Levy* v. *Brush* (45 N. Y. 589), has not been shaken as an authority upon this proposition. The redemption, therefore, by Gordon, if it should stand, would be a great damage to Ernest, and it is of great practical importance to him and to plaintiff, as his assignee, to decide it, even though the time has now passed in which Ernest could, by confessing a judgment or mortgaging his former interest, give a right to such judgment-creditor or mortgagee to redeem as stated above. It is also stated that Ernest was not injured, because Theodore was present at this time and was ready to redeem under and by virtue of his ownership of other judgments against Ernest, in case Gordon had not done so. We cannot decide this question upon a possibility as to what some one else would have done if Gordon had not redeemed, and also for the reasons hereinafter given, when that question will be discussed as to the right of Theodore to act adversely to Ernest in regard to any judgments purchased by Theodore. We hold that Theodore had no right to thus use those judgments any more than Gordon had to use the one under discussion, and then claim the full title to the interest of Ernest.

We fail to see any reason why the agreement between Gordon and Ernest was not a valid one. It was on good consideration, for by getting the judgment Gordon obtained what he wanted, an acknowledgment of the existence of the debt, the amount thereof and security for it. He made the agreement that he would not enforce it for a certain time and thereby he obtained the judgment. He has violated his agreement, and while clinging to the results of it he denies its efficacy in law. He says the effect of what the plaintiff asks is to make him a trustee and to create a trust, by parole in lands under circumstances not permitted by law. We do not think so. The effect of his conduct is that a court of equity treats him as a trustee *ex maleficio*, and, as in that capacity,

holding title to the interest of Ernest in the homestead in trust for Ernest or his assigns, subject to the repayment of the amount paid by Gordon when he redeemed from the Schmidtz judgment, and also to the payment of the amount of his own judgment, with interest on the amount he paid upon such redemption, from the time of such payment, and interest on the amount of his judgment from the time of the docketing thereof. The defendant Gordon is held to occupy such a position, not because he commits a fraud by refusing to perform a contract void by the statute of frauds, for the contract he made was not void. It was one simply not to enforce a judgment for a certain time. He violates the real substance of this agreement, not by redeeming the interest of Ernest, but by thereafter claiming to own it all under the redemption. Instead of being merely liable in damages for this breach, the character of a trustee *ex maleficio* is imposed upon him, because of the peculiar relations which the facts show these men, who were brothers, sustained to each other at that time.

The negotiations for a settlement of all differences were substantially concluded and a settlement effected, one of the terms being that Ernest or Morrell was to pay or take care of all the judgments against Ernest, and all parties knew this; and Ernest and Morrell relied on this fact as a reason for taking no steps to secure or protect the interest of Ernest, no one supposing that any hostile use would be made of any judgment, when, because of the supposed settlement, all reasons for it had ceased.

Under such circumstances there was a relationship existing between Gordon and Ernest upon the question of the use of this judgment by confession, grounded not only upon the specific agreement already spoken of, but also upon the faith placed in the settlement of all differences, which made such relationship fiduciary in its character, and which naturally led Ernest to suppose that no advantage would be taken of him by his brother by a fraudulent and unfair use of the judgment which he confessed for a security only. And it is seen that the judgment was itself confessed only upon the assump-

tion that this agreement settling all controversies was about to be carried out, and the inference is fairly to be drawn from the evidence that it was precisely because such agreement had been arrived at and all subjects of difference were about to be disposed of, that Gordon takes the opportunity to present his claim and to ask for the security of a judgment.

Under all the facts, we think the case of *Wood* v. *Rabe* (*supra*) is authority for the statement that Gordon is placed in the position of trustee of Ernest with reference to his title to the interest of Ernest, which he claims to own under his redemption by virtue of his judgment by confession, subject to the payments to Gordon as above described.

(2.) Theodore G. Peck, on the 2d of April, 1883, having the same knowledge in regard to the situation as his brother Gordon, purchased a judgment in favor of one Billings against his brother Ernest, amounting, with interest, to about $6,600, for the sum of $3,000, and now claims that he is entitled to be paid the full amount of that judgment which he still holds. We think he has no such right. In addition to his knowledge of the circumstances which have been stated in regard to Gordon, Theodore had stated to Ernest at the Hoffman House, in 1882, that he would protect his interest in the estate, and had written him a letter, dated March, 1882, in which he reiterated the promise. He had been substantially the agent of Ernest in regard to the estate, and was under express obligations to look after and preserve his interest in it. It is true the authority of Theodore to collect rents and make leases, etc., of the estate had been annulled by Ernest under the contract entered into between the brothers, and the power of attorney therein referred to had been by him revoked, yet Theodore was still, to some extent, in possession of the estate, attending to all the business in regard to it, and received all the rents, income and profits thereof, and Ernest might well have supposed from his conversation with Theodore and the letter referred to that he would fulfill his obligations and not seek to take advantage of him. Notwithstanding the revocation of the power of attorney and the annulling of the contract

their relations in regard to this matter continued to be fiduciary in their nature; and it cannot be tolerated that Theodore, under such circumstances, should be permitted to take advantage of his position for the purpose of making money out of his brother. He should be permitted to hold the judgment for the amount only that he paid for it, with interest.

(3.) There was a mortgage upon a portion of the premises owned by John Peck at the time of his death which, in the fall of 1881, amounted, principal and interest, to between $16,000 and $17,000. So far as appears there were no threats on the part of the mortgagee to foreclose; nor was there, at the time of the purchase by Theodore, any immediate and pressing necessity to forthwith take care of that mortgage. In the latter part of 1881, Theodore purchased the mortgage for $10,000, and took an assignment of it to himself, and now claims to hold it for its full amount. We think he is not entitled to do this. One of the leading cases upon the subject of the right of one tenant in common to bid in an outstanding title or incumbrance on the estate is *Van Horne* v *Fonda* (5 Johns. Ch. 388, 407). The learned chancellor there says that although he would not deny that one tenant in common might not, in any possible case, bid in an outstanding title for his exclusive benefit, yet (continuing), he says, " when two devisees are in possession under an imperfect title derived from their common ancestor, there would seem, naturally and equitably, to arise an obligation between them, resulting from their joint claim and community of interests, that one of them should not affect the claim to the prejudice of the other. It is like an expense laid out upon a common object by one of the owners, in which case all are entitled to the common benefit, on bearing a due proportion of the expense. * * * Community of interest produces a community of duty; and there is no real difference, on the ground of policy and justice, whether one co-tenant buys up an outstanding incumbrance or an adverse title to disseise and expel his co-tenant. It cannot be tolerated when applied to a common subject in which the parties had equal concern, and which created a mutual obligation to deal

candidly and benevolently with each other, and to cause no harm to their joint interest."

In this case, if the mortgage were due and the defendant Theodore desired to redeem, he must, of course, have redeemed by paying the whole mortgage, or whatever amount the mortgagee was willing to take. He could not redeem his share of the estate from the lien of the mortgage by paying simply what would amount to his share of the mortgage. If an incumbrance be bought in by a co-tenant or paid under such circumstances as exist in this case, the payment would operate as an equitable assignment from the mortgagee to himself, and his right under such equitable assignment would be to exact contribution from his co-tenants for the amount he had paid to redeem the mortgage. Pomeroy, in his excellent work on Equity Jurisprudence (§ 1221), states this doctrine fully. The same principle is decided in *Rothwell* v. *Dewees* (2 Black [U. S.] 613); *Weaver* v. *Wible* (25 Penn. St. 270), and *Lloyd* v. *Lynch* (28 id. 419, 424).

The case of *Streeter* v. *Schultz* (45 Hun, 406) is in no way adverse to this principle. In that case a mortgage upon the property was foreclosed. Schultz was a tenant in common with the plaintiff by virtue of a conveyance of an undivided half of the premises from the plaintiff to him, subject to a mortgage given by the plaintiff to secure the purchase-money. At the foreclosure sale of that mortgage, Schultz bid in the property for himself. He was also the owner of a subsequent mortgage given by the plaintiff to him on the plaintiff's undivided part of the premises; and the court held that, under such circumstances, it being a public sale, judicial in its nature, and the relations between the parties being at arm's-length, the case was taken out of the ordinary rule, and that the defendant, upon bidding in the property, obtained a good title thereto. In this case, on the contrary, at the very time when Theodore purchased the mortgage (which was at private sale), he was residing in the family mansion, where he had continued to reside since his father's death, and for a long time before it, and he knew that Ernest was in greatly embar-

rassed circumstances with judgments entered up against him, and that he was wholly dependent upon what he would realize as his share of his father's estate for the means of extricating himself from his difficulties. At the same time Theodore was managing the estate and was receiving all the rents, income and profits therefrom, the result being that Ernest was kept wholly unable to buy any mortgage himself or to contribute towards the purchase of any such.

Upon these facts, a court, which permitted Theodore to buy in a mortgage for much less than its face and to insist upon payment to him at the same rate as if he had paid all that was due thereon, would administer, in my opinion, neither law nor equity.

The counsel for the defendant Theodore claims, however, that even if he would not have the right at first to hold the mortgage for the full amount, yet, when informed of the purchase, the plaintiff's assignor, Ernest, should have offered to contribute his share of the purchase-price of the mortgage, that such offer should have been made within a reasonable time after knowledge of the purchase, and the failure of Ernest to make it entitled the defendant to enforce the mortgage for its full amount.

We do not think that the defendant places himself within any rule permitting such a result. All that appears in the evidence on the subject is that the defendant, Theodore, purchased this mortgage in December, 1881, and that on the 9th of February, 1882, when a question arose as to leasing a rolling mill on his father's premises, Ernest was present and heard that Theodore had purchased the mortgage. It is not found as a fact, but Theodore says in his evidence that the price he gave for it was mentioned, and that he then said that he should hold it for the full amount of principal and interest. Ernest says he does not think the amount paid by Theodore was mentioned. It was not a conversation addressed to him, and no demand for contribution and no intimation to that effect was made by Theodore. At that time the contract had been made by which Theodore was constituted the agent of the

estate to attend to its business and a salary agreed to be paid him therefor, and he was receiving all the income and rents therefrom. Under these circumstances we think it cannot be plausibly contended that even if Ernest heard the price paid by Theodore for the mortgage, and his claim to hold it for the full amount due thereon, that Ernest was bound to tender contribution of his share under penalty of a right on the part of Theodore to enforce the mortgage for such full amount. This is entirely different from the case cited by the counsel of *Mandeville* v. *Solomon* (39 Cal. 125). In that case one tenant in common discovered what he feared was a flaw in the title to some portion of the property, and he thought it best to purchase the outstanding title if it could be done for the sum named, and he asked his co-tenant to make contribution for that purpose. His co-tenant refused. He subsequently purchased the outstanding title, paying the sum stated for it and immediately wrote to his co-tenant all the particulars and asked him to contribute his share, and he made no answer, but entirely neglected to contribute anything. Long subsequent to that time the co-tenant desired to avail himself of the purchase, and the court held that he was too late.

The case of *Lee* v. *Fox* (6 Dana [Ky.], 171, 176), is substantially an authority for the proposition announced here, although there is a mere statement contained in the opinion that the election should be made within a reasonable time. We think that in this case there was no such presentation of the subject to Ernest as to call upon him to make an election, even if it could be assumed that such a purchase, under the circumstances, if a demand had been made, called for contribution at the peril of an enforcement of the mortgage for the full amount.

The above are all the questions submitted to this court, and in regard to each of them we think the decision of the General Term was correct.

Its order denying a new trial should, therefore, be affirmed, with costs.

All concur.

Order affirmed.