PEARL RIDER, an Infant, etc., Plaintiff, v. LENA PHILLIPS et al., Defendants.

(Supreme Court, Dutchess Special Term, October, 1919.)

Tenants in common — who are — trusts — evidence — mortgages — actions.

One tenant in common cannot purchase an outstanding claim or title to the exclusion of his co-tenant, but if he does, the purchase is presumed to be for the benefit of all.

Upon the purchase by E. and R. of certain premises they gave a purchase money mortgage and the balance of the purchase price was paid in cash and the deed taken in the name of R.'s wife. By arrangement among all parties in interest, R. collected the rents and paid them to E., who applied them to the carrying charges and in reduction of the second mortgage, and in case of a deficiency E. and R. were each to pay one-half thereof. The wife of R. died intestate, leaving her surviving her husband and an infant daughter, who there-

RIDER *v.* PHILLIPS.                     49

upon became seized of one-half of the property subject to her father's tenancy by the courtesy. At the sale in foreclosure of said mortgage E. bid in the property but his brother signed the terms of sale. E. assigned his bid to a niece, who never before had owned any real estate, and the property was conveyed to her by the referee, the mortgagee in the foreclosure taking back a purchase money mortgage, and a sister of said niece paid the ten per cent of the purchase price on the day of sale. In an action to impress a trust on the property in favor of the infant child of R. the defendant E. disclaimed any present interest in the property, and there was no direct evidence on the point, nor that his purpose in permitting the foreclosure was to cut off plaintiff's interest in the property, but the circumstances attending the transactions and the course of dealing between the parties lead to the conclusion that E. is still the owner. *Held,* that the presumption that he purchased not for himself alone but for plaintiff, his co-tenant, had not been overcome, and that upon a finding that the real estate is impressed with a trust in favor of plaintiff to the extent of her one-half interest as a tenant in common she was entitled to a conveyance of such interest by the defendant, who had received the referee's deed, and to an accounting of rents and profits, subject, however, to contribution by her of her share of all lawful expenditures made by the defendants upon the property.

ACTION to impress a trust on real property.

Bick, Godnick & Freedman, for plaintiff.

Robert W. Doughty, for defendant Phillips.

Graham Witschief, for defendant Edelman.

YOUNG, J. This action is brought to impress a trust on certain real estate in Beacon, N. Y., in favor of plaintiff, an infant two years of age.

The premises were purchased by the defendants Peter Edelman and Harry M. Rider on May 1, 1913, from Stephen T. Bannister, subject to a first mortgage of $3,000 and a purchase money mortgage to

4

Bannister for $7,000 for fourteen years payable in yearly installments of $500 each. The balance of the purchase price, $2,000, was paid in cash, and the deed was taken in the name of Ida D. Rider, the wife of Harry M. Rider and the mother of the infant plaintiff.

By an arrangement made between the defendants and Harry M. Rider, the latter collected the rents and paid them to Edelman, who applied them to the payment of the carrying charges and in reduction of the second mortgage, and in case of a deficiency he and Rider paid each one-half thereof. Ida D. Rider died September 4, 1917, intestate leaving her husband, Harry M. Rider, and the infant plaintiff, who thereupon became seized of a one-half part of the premises subject to her father's tenancy by the courtesy.

In March, 1918, Rider sold out his business and left Beacon, and thereafter Edelman collected the rents. Rider claims to have written a letter to Edelman prior to April 25, 1918, requesting a statement of the rents, but its receipt is denied by the latter. Thereafter Rider received from Edelman a letter, bearing that date, giving such a statement and showing a deficiency of $198.20 to be made up to meet the installment on the second mortgage due May first, and requesting payment by Rider of one-half thereof. The mortgage had then been reduced to $5,000. Rider testifies that he replied requesting Edelman to apply to this deficiency $112.42 which he claims Edelman then owed him by reason of the prior discount of a note. Edelman, however, denied the receipt of any such letter and also denies any indebtedness to Rider. Bannister, the mortgagee, pressed Edelman for the installment due on the mortgage, but Edelman requested him to wait until he could receive Rider's share of the deficiency. After waiting sometime, however, Bannister finally commenced a foreclosure action in June.

A guardian *ad litem* was appointed for the infant, and Rider appeared by attorney. Some attempt was made by Rider to save the property from the foreclosure, but nothing was accomplished and judgment was finally entered and the property sold thereunder at Poughkeepsie. It was bid in at the sale by Peter Edelman for $1 more than the amount due, and his brother Samuel Edelman thereafter signed the terms of sale. He assigned his bid to the defendant Lena Phillips, who was a niece of Peter Edelman, and who testified that before the sale she had concluded to purchase at the foreclosure at the suggestion of Peter Edelman that it would be a good investment. The property was conveyed to her by the referee and Bannister took back a purchase money mortgage for $4,000 payable in semi-annual installments of $500 each. The check given to the referee for the ten per cent on the day of the sale was that of Minnie Phillips, a sister of the defendant Lena Phillips.

Lena Phillips is twenty-two years of age. She had never prior to this purchase owned any real estate. At the time of the foreclosure she had several savings bank accounts. She testified that she frequently received money from various members of her family, including Peter Edelman, for various purposes, and he testified that she often loaned him money which he repaid and that he also advanced moneys to her and the various transactions are described. He did not produce his checkbook showing the purpose of the checks drawn by him during the period in question. He testified that it had probably been thrown away.

The defendants contend that Lena Phillips purchased for herself in good faith and not for Peter Edelman, that the latter owed no duty to plaintiff, his co-tenant, except to refrain from any affirmative fraudulent act to induce the foreclosure of her inter-

est and that he was not under any obligation to advance money to protect the property beyond the income derived therefrom. Plaintiff, on the other hand, urges that Peter Edelman is still the real owner of the property, that the relations between Peter Edelman and plaintiff as tenants in common were fiduciary in character, that he was precluded from acquiring an outstanding title or interest in the property for his exclusive benefit and that his purchase through Lena Phillips inured to plaintiff's benefit as well as his own and impressed the property in his hands with a trust in plaintiff's favor.

The contention by the defendant Edelman that after Ida Rider's death he lost interest in the property because it was unprofitable, that he only had $1,000 invested therein and that every year he was losing money, is not supported by the evidence. At the time of the foreclosure he had at least $2,000 invested in the property. The $500 annual installments paid on the principal of the second mortgage constituted an addition to the investment in the property and cannot be treated as a mere carrying charge. The rents were always sufficient to pay such carrying charges and leave a surplus to be applied on the principal of the second mortgage of approximately $350. Clearly, then, the property produced a small profit.

It is true that Edelman disclaims any present interest in the property and there is no direct evidence on the subject, but the circumstances surrounding the transactions and the course of dealing between the parties in my opinion leads to the conclusion that he is still the real owner. Nor is there any direct evidence that Peter Edelman's purpose in permitting this foreclosure was in order to cut off the infant plaintiff's interest. But I am unable to escape the conclusion that such was his intention. At the time of the default

less than $100 was necessary to pay the installment due and yet it is urged that he was willing to sacrifice his own investment rather than advance it.

While it is true that the evidence upon which I base this conclusion is somewhat meager, it must be borne in mind that plaintiff's evidence was drawn largely from reluctant and hostile witnesses.

I therefore find that the defendant Lena Phillips is really holding title to the premises for the defendant Edelman and the case must be determined in the same manner as though he had purchased at the foreclosure and taken title in his own name.

With this issue determined in plaintiff's favor the situation at the time of the default and foreclosure of the second mortgage may be thus summarized: Edelman with an investment of at least $2,000 in the premises and with a deficiency less than $100 to meet the annual installment on the second mortgage, permitted and suffered a default which resulted in a sale under foreclosure at which he purchased for himself for $1 more than the amount due and now holds through Lena Phillips the entire title with the intent which was thereby consummated to acquire the interest of his great-niece and co-tenant which had descended to her from her mother (his niece), and in which $2,000 or more had been invested.

The rights and duties of co-tenants in their relations to each other have been considered in numerous cases.

Thus in *Van Horne* v. *Fonda,* 5 Johns. Ch. 388, it was held that where two devisees are in possession of land under an imperfect title devised by their common ancestor, one of them cannot buy up an outstanding or an adverse title to disseize or expel his co-tenant, but such purchase will inure to their common benefit subject to an equal contribution to the expense. The court in that case said: " It is not consistent with good

faith, nor with the duty which the connection of the parties, as claimants of a common subject, created, that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself and thus undermine and oust his companion. It would be repugnant to a sense of refined and accurate justice. It would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties, as joint devisees, created. Community of interest produces a community of duty, and there is no real difference, on the ground of policy and justice, whether one co-tenant buys up an outstanding incumbrance, or an adverse title, to disseise and expel his co-tenant. It cannot be tolerated, when applied to a common subject, in which the parties had equal concern, and which created a mutual obligation, to deal candidly and benevolently with each other, and to cause no harm to their joint interest.''

In *Knolls* v. *Barnhart,* 71 N. Y. 474, it was held that where a widow paid a mortgage, took an assignment to herself, subsequently foreclosed and bid in the premises, the interests of the other heirs were not thereby cut off. The court said that it is a general rule that one tenant in common cannot purchase in an outstanding claim or title to the exclusion of his co-tenant.

In *Peck* v. *Peck,* 110 N. Y. 64, it appeared that one of the tenants in common purchased a mortgage on the premises for less than its face and sought to charge his co-tenants with contribution for the full amount. It did not appear that at the time he purchased there was any intention by the mortgagee to foreclose nor any pressing necessity to take care of the mortgage. It was held that he could only require his co-tenants to

contribute their share of the amount he had paid, citing *Van Horne* v. *Fonda, supra,* p. 73.

In *Carpenter* v. *Carpenter,* 131 N. Y. 101, it appeared that executors, although having sufficient moneys in their hands to pay interest on the mortgages, defaulted and induced the holders to foreclose. Different portions of the property were bid in by certain of the children and the interest of the plaintiffs, who were co-tenants, was thereby divested. It was held that the titles acquired in the foreclosure were subject to a trust in plaintiff's favor.

In *Allen* v. *Arkenburgh,* 2 App. Div. 452; affd., 158 N. Y. 697, it appeared that certain of the parties owned property in New Jersey as tenants in common which was about to be sold in partition at a loss; that one of the tenants promised that if the others would not bid he would buy it in, pay the charges and divide the surplus equally among the tenants in common. He bought it in, took title, and thereafter died, and the property was sold under a power of sale contained in his will. It was held, among other things, that the presumption is ordinarily that a tenant in common who purchases an outstanding interest does so for the benefit of all proprietors.

In *Collins* v. *Collins,* 13 N. Y. Supp. 28; affd., 131 N. Y. 648, it was held that where a joint owner of property purchased at a foreclosure sale under a mortgage which had been assigned to a student in his office, the title acquired by him was subject to a trust in favor of his co-tenant.

In *Streeter* v. *Shultz,* 45 Hun, 406; affd., 127 N. Y. 652, it appeared that plaintiff conveyed to Charles Shultz one-half of certain premises subject to a mortgage of $7,500. Thereafter the mortgage was foreclosed, the premises being sold to one Christie who bid, in behalf of and assigned his bid to Shultz, who

took a deed of the premises. There was no agreement that Shultz was to buy for the joint benefit of himself and the plaintiff and the price paid was the fair value. It also appeared that plaintiff thereafter sold all his personal property to Shultz and that Shultz had obtained a grant of land under water from the state and built docks and buildings at a very large expense. Plaintiff appears to have acquiesced in the purchase by Shultz at the foreclosure and never made any objection thereto until many years later he commenced an action to redeem his undivided one-half from the foreclosure. The court held first that the fact that Shultz was a tenant in common with plaintiff with no. duties toward him other than such as necessarily arose from the co-tenancy did not prevent him from purchasing the premises for his own benefit, and that the subsequent acts of the plaintiff and his long acquiescence in the purchase by Shultz would defeat his claim even if originally good.

In *Dolan* v. *Cummings,* 116 App. Div. 787; affd., 193 N. Y. 638, it was held that a relation of confidence and trust exists between brothers and sisters who are tenants in common of lands, and if one .tenant conceals the fact that he has had a specific offer for the real estate and induces his co-tenants to sell their interests to himself at a lower value, they are entitled to rescind the sale on discovering the offer. In that case the question of the relation of tenants in common was discussed by Gaynor, J., in a concurring opinion as follows: "The question whether the mere relation of tenancy in common creates a fiduciary relation among the tenants in respect of the common property seems to be unsettled. In the cases of *Van Horne* v. *Fonda* . (5 Johns. Ch. 388), *Dickinson* v. *Codwise* (1 Sandf. Ch. 214) and *Wells* v. *Chapman* (4 id. 333), there were

other elements besides the mere relation. The opinion of the lower court in the case of *Graham* v. *Luddington* (19 Hun, 251, n.) was in the affirmative, while the opinion of the three judges on appeal in the case of *Streeter* v. *Shultz* (45 id. 406) was in the negative. In the case of *Peck* v. *Peck* (110 N. Y. 64) there were also other elements. In the case of *Abbey* v. *Wheeler* (85 Hun, 226) it was held that a suit for an accounting would not lie by a tenant in common against his co-tenant, on the ground that there was no fiduciary relation between tenants in common, and therefore nothing to give equity jurisdiction of such a suit. And so our cases in this State run. There is a diversity of opinion elsewhere. Mr. Bispham, however, in his scientific and altogether able treatise on the principles of equity enumerates the relation of tenants in common among those out of which arises *ipso facto* a fiduciary relation (7th ed., § 93); and the case of *Duff* v. *Wilson* (72 Penn. St. 442) warrants his text.

" The present case not only brings the question up squarely, but shows that it ought to be decided in the affirmative."

In the above cases, although differing in their facts from the case at bar, one clear and dominant principle is laid down which in my opinion is equally applicable to the situation here. One tenant in common cannot purchase an outstanding claim or title to the exclusion of his co-tenant and such a purchase is presumed to be for the benefit of all.

I do not think the case of *Streeter* v. *Shultz* is at war with this principle. In that case the plaintiff was of full age and acquiesced in the purchase openly made for full valuation by his co-tenant with full knowledge and without raising any objection until many years later after defendant had expended large sums of money in improvements on the property.

Surrogate's Court, Bronx County, October, 1919. [Vol. 109.

Edelman's purchase therefore is presumed to have been not for himself alone, but for plaintiff his co-tenant as well, and unless that presumption has been rebutted by the evidence it is conclusive of this case. In my opinion this presumption has not been overcome, and I therefore find that the real estate in question is impressed with a trust in favor of plaintiff to the extent of her half interest as a tenant in common, and that she is entitled to a conveyance of such interest by the defendant Phillips and to an accounting of the rents and profits, subject, however, to contribution by her of her share of all lawful expenditures made by the defendants upon the property.

Judgment accordingly.