GEORGE H. KENNEDY et al., as Executors, etc., Plaintiffs, *v.* EDWARD SMITH et al., Defendants.

(Supreme Court, Erie County, December, 1921.)

Adverse possession — tenants in common — dower — guardian in socage — action to determine claim to real property — widow's possession held not to be adverse to her husband's heirs.

The legal presumption is that the possession of one of several tenants in common is that of all.

One of several tenants in common may acquire title against the co-tenant by adverse possession, but in order to do so, the possession must be such as to constitute an exclusion or ouster of the co-tenants evidenced by an open, notorious and adverse occupation under a claim of right.

A widow entitled to dower is during the minority of her infant children entitled as their guardian in socage to the possession of premises in which the children have an undivided interest.

Where a widow originally became possessed of real estate of which her husband died seized rightfully as dowress and guardian in socage and not adverse to her deceased husband's heirs at law, such occupancy will be deemed subordinate to their lawful claims unless there was a definite, open and unquestionable change of position.

*Zapf* v. *Carter,* 70 App. Div. 395, distinguished.

Evidence in an action to determine a claim to real property of which the husband of plaintiff's testatrix, many years ago,

died seized, considered, and *held,* that there being a failure to prove an occupancy of the premises by plaintiffs' testatrix who devised the same, under a claim of title adverse to that of her stepson and daughters, defendants were entitled to judgment.

SUIT in equity to determine claim to real property.

George H. Kennedy, for plaintiff.

Warren Tubbs and Carlos C. Alden, for defendant Smith.

Ernest F. Kruse, for defendants Hoover.

SEARS, J.   In 1857, the premises in question at the northwest corner of South Park avenue and the Abbott road in the city of Buffalo, together with an adjoining piece of property to the west, bounded on the south by the Abbott road, were owned by one Michael Roberts. In June of that year, by deeds to and from a third person, Michael Roberts caused the title to the piece of property adjoining the premises in dispute on the west but not the title to the premises in question, to be vested in Louisa, his wife.   Upon the premises involved in this action there had been erected, previous to 1857, a two-story frame building, where Michael Roberts and his family lived, and where he conducted a feed and grocery store and saloon or hotel.   This building, with additions mentioned hereafter, is still standing.   In 1862 Michael Roberts died, leaving his widow, Louisa, and three children, a son William Roberts who was the child of an earlier marriage, and is the father of the Roberts defendants, a daughter, Emma, who is the mother of the Hoover defendants, and a daughter, Louisa, who became the wife of the defendant Edward Smith.

At the time of the death of Michael Roberts, his

children were aged respectively, William fourteen, Emma eight and Louisa six years. The widow and the three children continued to live in the house on the premises in question, and the widow continued the business. A few years later Louisa, the widow of Michael Roberts, became the wife of one John Stamp who thereupon joined the household of his wife, and she continued to live upon the premises in question with her husband, and to run the business conducted there. There were children born of this marriage, and they too lived in the house. William Roberts grew up and went west. Emma married Mr. Hoover in 1873, before becoming of age, and moved to another house in the same part of the city of Buffalo, and continued to live in that vicinity the rest of her life. In 1875 Louisa married the defendant Smith, before becoming of age, and moved to a house in the same general vicinity. Louisa, the youngest Roberts child, became of age in 1877.

John Stamp, while living on the premises, made improvements to the building, erecting two additions at a cost in the aggregate of about $1,000, which were partly upon the premises in question and partly upon the adjoining premises which his wife, Louisa, owned, the building projecting over the westerly line of the premises involved in this action about ten feet.

The property in question and the adjoining property have always been assessed by the assessors as one parcel and were assessed to Michael Roberts until 1867, and after that, for many years, to John Stamp. They were formerly enclosed by fences and buildings. The taxes upon the premises in question, during the lifetime of Louisa, were always paid by her or her second husband, and large sums have been expended by her for local improvements, such as paving, sewers, etc. The insurance premiums from 1904 to the date

of her death were paid by Louisa Stamp, and the insurance policies were written in her name.

In 1893, John Stamp and his wife and their children vacated the premises, going to live in another house in the same neighborhood, and from that time, as long as Louisa Stamp lived, the premises were rented by her at first for two hundred dollars a year, a little later for twenty dollars a month, and finally for thirty-eight dollars a month, and the rents were always paid to her. In 1900, John Stamp died. In 1893, Louisa Smith died, leaving a will, by the terms of which her real property was devised to her husband, the defendant Edward Smith. In 1905, Emma Hoover died intestate, leaving the defendants Hoover as her heirs-at-law. William Roberts died in 1911, leaving the Roberts defendants as his heirs-at-law. In 1919, Louisa Stamp died, leaving a will, in which she devised her real estate to these plaintiffs as trustees, who, since Louisa Stamp's death, have collected the rents. About eighteen months after the death of Louisa Stamp, this action was brought.

About 1898, the premises in question were rented to one of Louisa Stamp's grandsons named Hoover, who paid rent to his grandmother. At one time Louisa Stamp received and refused an offer for the purchase of the premises, and stated the sum at which she was willing to sell it. At another time she talked of conveying the premises to one of her grandchildren. Throughout the life of Louisa Stamp, she was at all times on friendly terms with her children and grandchildren, and they visited her frequently, and all the descendants of Michael Roberts except William Roberts and his descendants, lived in the immediate vicinity, and William Roberts from time to time came to Buffalo and saw his stepmother.

The question presented by this action is whether

Louisa Stamp obtained title to the premises by adverse possession and this question is by no means free from doubt. There is nothing to justify the conclusion that John Stamp was ever personally in possession. If title was gained by adverse possession, it was by Louisa Stamp. Louisa, the widow of Michael Roberts, was at all times entitled to dower in the premises, and during the minority of her children Louisa and Emma, was their guardian in socage, and entitled to possession of the premises because of their undivided two-thirds interest. While it is unquestionably true that the possession of one of several tenants in common is, presumably, the possession of all (*Allen* v. *Arkenburgh,* 2 App. Div. 452; *Berger* v. *Horsfield,* 188 id. 649), nevertheless, it is equally true that one of several tenants in common may acquire title against his co-tenants by adverse possession. In order to do so, however, the possession must be such as to constitute an exclusion or ouster of the co-tenants. *Florence* v. *Hopkins,* 46 N. Y. 182, 186. This may be evidenced by an open, notorious and *adverse occupation* under a claim of right. *Culver* v. *Rhodes,* 87 N. Y. 348. Was the occupancy by Louisa Stamp sufficient to amount to an ouster of her stepson and her own daughters? It may be conceded that it would have been sufficient as against a stranger, but the other owners were not strangers; two of the three were of her own blood, and the third was her husband's child whom she had evidently brought up, as he was only fourteen years old at the time of the death of his father, Michael Roberts, and was less than six when she married Michael Roberts. The widow, Louisa, originally became possessed of the property rightfully, as dowress and guardian in socage, and not adversely to her husband's heirs-at-law. Her occupancy must be construed as subordinate to the lawful claim of the heirs-

16

at-law, unless there was a definite, open and unquestionable change of position. *Knolls* v. *Barnhart,* 71 N. Y. 474.

The authority in this state most favorable to the plaintiffs is *Zapf* v. *Carter,* 70 App. Div. 395. A similar occupancy by a dowress, with no more convincing evidence of a claim of title than occurs in this case, was there held to have ripened into a complete title valid against the heirs-at-law of her husband. Two points are to be noted, however, in respect to the case of *Zapf* v. *Carter:* (1) the persons against whom the widow was held to have acquired title by adverse possession were not her relatives, and no position of confidence on the part of the widow or of filial respect and duty on the part of the heirs-at-law existed to deter the dowress on the one hand from ousting the heirs-at-law, or the heirs-at-law on the other from demanding possession; and (2) the plaintiff in the *Zapf* case had been the executor of the widow and had learned of the outstanding title while he had been acting as such and had then purchased it for his own benefit, and Mr. Justice Spring, in the course of his opinion in that case, said: " The course of the plaintiff in procuring the conveyances from the two sisters of Ashley does not require us to scan with too much minuteness the title of the defendant and her devisor. \* \* \* The courts have uniformly condemned the acts by which an agent obtains title to property to undermine his principal, and this conduct of the plaintiff is reprehensible in the extreme, although the referee, by evidence which may be said to sustain it, has found he apprised the vendors he was buying the land for himself."

In the instant case, the repairs and improvements were made by John Stamp and may well have been a consideration for his use of the property. The taxes

and local assessments presumably were paid out of the rents. While some of the local assessments were many times larger than the rents for any one year, it does not appear that they were larger than the aggregate value of the use and rents received. What accountings, if any, were had between the mother and her children are unknown, but it may well be that the children received none, and, in fact, may not have known of their interest in the real estate. It is true that from the time the children of Michael Roberts became of age, they could have maintained an action of ejectment against their father's widow, thus requiring her to seek the admeasurement of her dower. *Jackson* v. *O'Donaghy,* 7 Johns. 247. But this circumstance is not conclusive of the nature of the occupancy. As long as an assignment of dower is not required, the dowress may well be considered in possession by consent. *Boyer* v. *East,* 161 N. Y. 580. I am loathe to hold, unless compelled to do so, that a mother thus acquired title against her own daughters. On the whole, I am of the opinion that there has been a failure to prove an occupancy under claim of title adverse to that of her stepson and daughters.

These considerations would be less strong in the case of Edward Smith, were he the sole record owner, but as his interest is but an undivided one, I am of the opinion that there was no change in the holding as to him any more than as to Emma Hoover and her heirs, or William Roberts and his heirs.

Judgment is, therefore, granted in favor of the defendants, with a single bill of costs to the defendants who have appeared.

Judgment for defendants.