OPINION OF THE COURT
Edward J. McLaughlin, J.
When two persons enter into a land contract as tenants by the entirety, then, as the result of a divorce, one of the tenants is granted exclusive possession of the marital residence named in the land contract, that spouse, as a tenant in common, is entitled to the benefit of the contract. Both spouses have rights on the contract which cannot be extinguished by one or the other of them by independent action.
The issue now before the court is whether petitioner is entitled to the exclusive possession of the marital premises which was granted to her by a divorce decree of the Onondaga County Supreme Court on February 1, 1977. The resolution of this issue depends upon whether or not the residence at Apulia Road, Lafayette, New York, is still the "marital residence” as conceived and viewed by the February 1, 1977 Supreme Court decision.
On September 14, 1979 petitioner filed a petition with the Family Court seeking to enforce the order of the Supreme Court which granted her exclusive possession of the marital home, located at R.D. No. 2, Apulia Road, Lafayette, New York, alleging that the respondent was now living in that home and refused to allow the petitioner access to the home. On December 20, 1979 attorneys for the parties submitted a statement of stipulated facts and exhibits to the court. The court reserved decision.
facts
On June 23, 1962 petitioner and respondent were married. During their union eight children were born to them.
*569 On October 11, 1968 petitioner and respondent entered into a land contract for the purchase of a house on the Apulia Road in Lafayette, New York. The purchase price of the house was $12,500. A preliminary payment of $1,000 was made when the contract was executed. Subsequent payments were scheduled to start on December 1, 1968 and were to be paid monthly until October 1, 1983. The buyers also both agreed to pay all taxes on the property, carry fire insurance at their own cost, and to keep the property in a state of good repair during the term of the contract. Petitioner and respondent and their children entered into possession of the property on November 1, 1968.
On February 1, 1977 a decree of divorce was entered in the Supreme Court, Onondaga County. The decree awarded exclusive possession of the marital residence to the petitioner herein. No provisions were made in the decree allocating responsibility to either party for making payments on the contract, paying the taxes, paying for fire insurance coverage, or paying for necessary repairs to the property.
On February 21, 1978 the executor of the estate of the seller canceled the contract basing his action upon the failure of the buyers to make monthly payments, to pay taxes, or to make necessary repairs to the property on Apulia Road.
On April 1, 1978 respondent herein entered into a land contract for the same property from the same seller for a purchase price of $5,583.61. The other terms of the contract were identical to those contained in the land contract of October 11, 1968.
On April 28, 1978 the Family Court modified the order of the Supreme Court and awarded custody of two of the children to the respondent. No other modifications of the divorce decree have been made.
LAW
Marital premises, unless otherwise stated, are held by both the husband and wife as tenants by the entirety. When the marital relationship is terminated by divorce, the tenancy is severed and the parties become tenants in common of the property. (Hosford v Hosford, 273 App Div 659.)
The Supreme Court may, at this point, use its discretion pursuant to section 234 of the Domestic Relations Law and either award exclusive possession of the marital home to one *570 of the parties or order the sale of the home and distribution of the net proceeds to both parties as "justice requires having regard to the circumstances of the case and of the respective parties”. (Domestic Relations Law, § 234; Ripp v Ripp, 38 AD2d 65.) The decision of whether to sell the home or to award exclusive possession is based primarily upon a balancing of the realistic needs of spouses and any children of the marriage. (Wages v Wages, 38 AD2d 968.) Certain factors that will be considered include: "the relative financial resources of the parties, the need of either party for occupancy of the home, and the duration of the exclusive possession” — as well as — "the cost of maintaining the home in comparison to the benefits received, the financial hardship suffered by either party by the refusal to authorize a sale of the property, the presence or absence of children to enjoy the use of the home, or the size and expansiveness of the home in relation to the expected use”. (Ripp v Ripp, supra, at p 69.)
In the present situation, the petitioner wife was awarded custody of the couple’s eight children and exclusive possession of the marital home.
The title of the marital home, however, in the case now before the court, rather than being held by either of the parties and financed through a traditional mortgage, was held by a Leon Cook, the seller of the property. The parties’ rights to the home arose through the land contract which they had both entered into on October 11, 1968.
Although the petitioner was given exclusive possession of the marital home, no provision was made in the Supreme Court decree as to the responsibility for making payments on the contract. Nor did the Supreme Court assign financial responsibility for house maintenance repairs. Due to the failure of the buyers to pay monthly payments, taxes, and to make necessary repairs, the seller on February 21, 1978 canceled the land contract and resumed possession of the property.
In Cole v Cole (57 Misc 490), the court held that it is the duty of a cotenant in sole possession of the common property to pay for ordinary repairs. Thus, the petitioner was responsible for these payments but this is not the issue here. The seller did not repossess the house solely because the petitioner failed to make repairs but because the installment land contract payments were not made. If the respondent was withholding payment due to nonrepair, he was pursuing the *571 matter in an inappropriate way and should have been seeking partition of the property.
More applicable to this situation is the issue of just who was responsible for the monthly installment payments. Sterlace v Sterlace (52 AD2d 743) held that responsibility for mortgage payments, taxes and insurance should not be borne solely by the wife, who was given possession, but also by the husband. This rule may be applied unless the settlement agreement specifies who is to pay for what. Here, there was no such allocation. Thus, the respondent was at least partially obligated to provide some of this money. This is only equitable in light of the fact that upon partition, both parties will share equally in the proceeds of the sale. When the payments were not made and the property was forfeited, it was the result of both party’s negligence in meeting their obligations.
If the sequence of events had stopped at this point, i.e., repossession of the house, additional support would have been awarded to compensate for the deprivation of the ex-wife’s and children’s living accommodations which were part of the agreement. (See Mario v Mario, 51 AD2d 428.) It was the court’s intent that the respondent provide shelter for his family.
This case is unique, however, in the aspect that once the property had been vacated by the petitioner and returned to the seller, the respondent went to the seller and arranged to buy the property for the remaining $5,583.61 left on the land contract. The respondent then took possession and excluded the petitioner. The respondent argues that he bought the house under a new contract. However, the notion that the payment made by the respondent was only a continuation of the contract as opposed to a separate transaction is manifested by the low purchase price. If a new contract was involved, the seller would have asked for the fair market value of the property rather than just the balance of payments. Thus, no new contract was involved and the parties still owned the house under the original contract.
At this point the situation can be analogized to the mortgage area. In New York the installment land contract is like a mortgage except for the fact that: (1) it is a seller financed transaction and (2) under an installment land contract the vendee does not have a right to a foreclosure sale upon default as does the mortgagor. In most other respects, however, the installment land contract is identical to the mortgage.
*572 The courts, in the mortgage cases, have held that one tenant in common cannot purchase for his own exclusive benefit an outstanding claim against the property. If such a purchase is made, it is presumed to be for the benefit of all, provided there is contribution from the other cotenants. This rule is especially applicable where, as here, the cotenant seeking to acquire adverse title has invited the sale; as where he has defaulted on a mortgage, etc. (See Seymour v Seymour, 120 Misc 525; Rider v Phillips, 109 Misc 48.)
Here, the respondent invited the sale by defaulting on his share of the installment payments. Thus, when he bought the remainder of the property, he did so for the benefit of all the cotenants, his ex-wife and himself, and preserved the cotenancy.
Accordingly, this court finds that the premises at R.D. No. 2, Apulia Road, Lafayette, New York, are the marital premises referred to in the Supreme Court decree of February 1, 1977. The court, therefore, also finds that the petitioner is entitled to exclusive possession of the marital premises as awarded her by the divorce decree.