In re Mark L. SONTAG, Debtor.

John P. CAMPO, Esq., as trustee of the Estate of Mark L. Sontag, Debtor, Plaintiff,

v.

Mark L. SONTAG, Lorraine Sontag, Keith Sontag, Scott Sontag, Kantor, Davidoff, Wolfe, Rabbino & Kass, P.C., North Side Savings Bank, f/k/a Richmond Hill Savings Bank, Reisman, Peirez, Reisman & Calica, Citibank, N.A., Chase Manhattan Bank, USA, known as Natiss, Ferenzo and Garberco, American Express Travel Related Services Co., Inc., EAB and Trust Company, Defendant.

Bankruptcy No. 889–92015–478.
Adv. No. 890–8260–478.

United States Bankruptcy Court, E.D. New York.

March 18, 1993.

James Pagano, New York City, for trustee/plaintiff.

Kantor, Davidoff, Wolfe, Rabino & Kass, P.C., pro se.

Reisman, Peirez, Reisman & Calica, Garden City, NY, for Lorraine Sontag, Keith Sontag and Scott Sontag.

### DECISION ON DAMAGES TO THE ESTATE BY DEBTOR'S FORMER SPOUSE

DOROTHY EISENBERG, Bankruptcy Judge.

### INTRODUCTION

This matter comes before the Court upon the Chapter 7 trustee's complaint seeking to hold a debtor's non-debtor ex-spouse liable for diminution in value of the former marital residence during her sole occupancy, and for use and occupancy of the residence subsequent to the filing of the Debtor's petition but prior to the sale of the real property by the trustee.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this motion pursuant to 28 U.S.C. § 1334. This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E) and (O).

### FACTS AND BACKGROUND

Mark Sontag ("Debtor") and Lorraine Sontag ("Mrs. Sontag") were formerly married and had two children. The marriage was dissolved on June 19, 1984, by order of the Supreme Court of the State of New York, Nassau County.

On July 17, 1984, a stipulation (the "Stipulation") was executed between the former spouses regarding, *inter alia,* the disposition of the former couples' single substantial asset, the marital residence and real property owned by the former couple in fee as tenants by the entirety. The Stipulation was read on the record in Justice Levitt's chambers and given the imprimatur of the state court. *See, Sontag v. Sontag,* 114 A.D.2d 892, 495 N.Y.S.2d 65 (N.Y.A.D. 2 Dept.1985); appeal dismissed by 66 N.Y.2d 554, 498 N.Y.S.2d 133, 488 N.E.2d 1245 (1986). Approximately one month after the date of the Stipulation, Debtor moved for an order enforcing the Stipulation on the grounds that on the day following the entry into the Stipulation, Mrs. Sontag "changed her mind" and "decided not to abide by the terms of the stipulation." By Order dated January 7, 1985, New York State Supreme Court Judge Levitt granted Debtor's motion to incorporate all terms of the Stipulation, which merged with the Order. Mrs. Sontag thereafter appealed, but the Order of Judge Levitt was affirmed on November 12, 1985.

The relevant portion of the settlement agreement and order of the state court essentially provided that the real property formerly owned as tenants by the entirety would be sold within a reasonable time, providing Mrs. Sontag and her two children a reasonable time within which to relocate. One-half of the first $100,000 realized upon the sale was to be turned over to Mrs. Sontag, and any amount in excess of $100,000 would be paid to the Debtor.

Despite the Stipulation and state court order entered into on November 12, 1985, the property remained unsold and litigation continued between the ex-spouses in the matrimonial court resulting in determinations by the state court relevant to the instant proceeding. By order of the state court dated October 29, 1987, Mrs. Sontag, together with their children, were granted exclusive occupancy of the property. Subsequently by order of the state court dated February 25, 1988, Mrs. Sontag was awarded an additional sum of approximately $25,-000 representing unpaid maintenance and child support, which resulted in a judgment lien against the Debtor's interest in the real property on behalf of Mrs. Sontag. The 1988 order also directed that the property be sold within thirty days at a price to be determined by the Debtor with the cooperation of Mrs. Sontag, and further provided that Mrs. Sontag could remain on the premises prior to the time possession would be required to be delivered to any purchaser but in no event later than three days after the closing. Mrs. Sontag remained in possession but the property remained unsold.

On October 27, 1989 the Debtor filed a petition under Chapter 7 of the Bankruptcy Code. The appointed Chapter 7 trustee, John P. Campo ("Trustee"), thereafter sought to sell the property in order to liquidate the Debtor's interest for distribution to creditors. The Trustee attempted to obtain a consensual agreement as to the sale of the realty with Mrs. Sontag.

Mrs. Sontag acknowledged that she would cooperate with any sale proposed by the Trustee provided the Trustee assured her that she would receive her $50,000 interest in the proceeds at the closing. (Exhibit "W", Letter of March, 1990). The Trustee maintained that as Trustee of the Debtor's estate, he had a claim against Mrs. Sontag for damages based upon the poor condition of the house due to her lack of routine maintenance and insisted that Mrs. Sontag's portion of the sale proceeds be placed in escrow, and further insisted that Mrs. Sontag vacate the premises before the Trustee took any action to sell the property, claiming that he could not otherwise guarantee immediate possession to a prospective purchaser when the parties could not agree. The Trustee brought the instant adversary proceeding on September 17, 1990 to resolve these issues.

On March 29, 1991 this Court granted the Trustee's motion to the extent of directing that the property be sold and the proceeds placed in escrow pending further determination by this Court. At a Court authorized public auction sale held on July 25, 1991, the property was sold for $200,000. Mrs. Sontag moved from the premises several weeks prior to the sale.

From before the date of the divorce to date, there was sufficient evidence adduced to indicate that Mrs. Sontag had suffered severe physical health problems which required her physical rehabilitation in order to enable her to obtain work and earn any income from which to support herself and her two young children. From 1984 to 1990, her income ranged from $17,500.00 to $33,000.00. As of the time of this adversary proceeding, Mrs. Sontag had sufficiently recovered to a degree which enables her to earn a modest income. However, during the course of time from the divorce until the present, she had been either physically unable herself to perform any repairs or maintenance or was financially limited so that the hiring of repair or service people would have adversely impacted upon her ability to adequately support herself and her two children.

The issues to be determined concern: (1) the liability of Mrs. Sontag for damage to the property based upon her failure to adequately maintain the property and, consequently, such determination's effect against the $50,000.00 being held in escrow; and (2) her liability for the use and occupancy of the property from the date the Debtor's petition was filed until she vacated the premises. This decision will also affect the rights of various secured parties who have a right to share in the proceeds of sale by virtue of having unavoidable judicial liens against the Debtor's interest in the real property.

## DISCUSSION

Marital disputes often pose the most difficult legal questions because it is not uncommon for the equities to lie with both parties. In this case, however, there are additional interested parties who also seek to be compensated from any proceeds of this estate, and who are not as concerned with the equities between the feuding spouses. Therefore, it is necessary for this Court to determine the issues based on the facts and law of the case so that all interested parties may know what their interests are in the proceeds of this estate presently being held by the trustee.

■ Congress has generally left the determination of property rights in the assets of a debtor's estate to state law unless some federal interest requires a different result. *Butner v. U.S.*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979). The existence and nature of a debtor's interest, and correspondingly the estate's interest in property, is determined by state law. *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir.1989). A trustee's rights with regard to third parties are also to be determined by state law. *In re Cirasuolo*, 48 B.R. 447, 449 (Bankr. N.D.N.Y.1985). Therefore, in order to determine the Trustee's claim against Mrs. Sontag, we must look to the law of the State of New York.

■ Furthermore, a bankruptcy court is precluded from re-litigating judgments rendered by courts of competent jurisdiction, absent a showing that the judgment was procured by fraud or collusion. *Teachers Insurance and Annuity Association of America v. Butler*, 803 F.2d 61, 66 (2nd Cir.1986). The full faith and credit mandate is found in 28 U.S.C. Section 1738 and provides in pertinent part:

> The records and judicial proceedings of any court ... of any state ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of that state.

Bankruptcy courts fall within Congress' mandate which specifically requires all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments emerged would do so. *Allen v. McCurry*, 449 U.S. 90, 96, 101 [101 S.Ct. 411, 415–418, 66 L.Ed.2d 308 (1980)]; *In re Farrell*, 27 B.R. 241, 243 (Bankr. E.D.N.Y.1982).

Therefore, the prior New York State Court judgments regarding the Sontag's interest in the property will be given full credit.

■ The 1985 judgment of the New York State Court awarding Mrs. Sontag $50,000.00 from the proceeds of sale was clear. This judgment provided her with an absolute property interest that vested when that judgment became final several years pre-petition. *In re Resare*, 142 B.R. 44 (Bankr.R.I.1992) (once a former wife's interest in a debtor-husband's pension proceeds vests pre-petition pursuant to a separation agreement, debtor's estate ceases to have any interest therein). *See also, In re Coombs*, 86 B.R. 314, 317 (Bankr.D.Mass. 1988) (under Massachusetts law, a wife's survivorship rights in sale proceeds from property held by tenancy by the entirety with debtor husband continues post-petition.) The $50,000.00 awarded to Mrs. Sontag is not property of this Debtor's estate as of the date of the filing of the petition. The Trustee did not have any right to those funds.

## DAMAGE TO THE PROPERTY DUE TO FAILURE TO MAINTAIN

An extensive hearing was held at which a qualified engineer described the physical deterioration of the property caused by the lack of regular and ordinary maintenance and neglect. The cost to correct the deterioration was assessed at over $80,000 pre-petition. The Trustee's appraiser confirmed the deterioration and appraised the value of the property as of a date prior to the auction sale at $197,000.00. The property was sold shortly thereafter for $200,-000.00. The appraiser further testified that the property's market value as of the time of his appraisal could have been $235,-

000.00 if the property had been routinely maintained.

Throughout the proceeding, Mrs. Sontag defended her lack of maintenance and repairs to the property by claiming that she was not receiving adequate maintenance and support payments from the Debtor, as evidenced by a judgment she had against the Debtor for approximately $25,000.00 for unpaid maintenance and child support. What she actually did receive from the Debtor, when combined with her salary, was barely sufficient to adequately provide for the necessities required for sustenance and education for herself and her children.

This Court finds that the Defendant's ability to support herself was seriously affected by her physical disability, and that her failure to provide regular maintenance and repair to the residence was not willful, but resulted from an actual lack of funds or physical ability to perform the necessary upkeep on the property.

■ However, under New York law, following a divorce a husband and wife own their marital residence as tenants in common. *McDonald v. Driscoll*, 103 Misc.2d 567, 426 N.Y.S.2d 678, 679 (Family Court, Onondaga County 1980). Where no provision is made in the divorce decree as to the responsibility for house maintenance repairs, such duty falls on the co-tenant in sole possession. *Id.*, 426 N.Y.S.2d at 680. Thus, it is clear that in the instant matter the duty fell upon Mrs. Sontag to maintain the property and she must be held liable for her failure to uphold that duty.

■ Accordingly, this Court further finds that the property had not been maintained by Mrs. Sontag, had been neglected and had deteriorated because of her failure to provide ordinary maintenance and repair.

The testimony of the Trustee's appraiser, essentially uncontroverted by Mrs. Sontag, established the fair market value of the property at the time of sale to be $197,000. The property was actually sold at auction for $200,000.00. The appraiser further established that, had the necessary maintenance and repairs been performed, the fair market value of the property would have been $235,000. Mrs. Sontag's failure to properly maintain the property resulted in a diminution in value to the estate of $35,000.00.

Although the Trustee has submitted credible testimony of an engineer indicating that it would cost over $80,000 to correct the deterioration, the correct measure of damage is the diminution in value to the estate rather than the cost of repair. In other words, the Trustee is entitled to recover market value lost, not replacement value. Therefore, Mrs. Sontag is liable for damage to the estate for failure to maintain the premises in the amount of $35,000.

### DAMAGES TO THE ESTATE FROM DELAY IN SALE

■ The Trustee's appraiser testified that the delay of the sale dramatically increased the effective amount of damage to the estate because market conditions during the years immediately preceding the sale caused the ultimate market value to drop substantially. However, there is no evidence to support the Trustee's allegations that Mrs. Sontag caused the delay of the sale of the property. It is true that additional damage to the estate was caused by a decrease in value attributable to the declining real estate prices in the market place. However, the delays in selling the property are not attributable to Mrs. Sontag and she will not be held liable for said damages.

Other than by her insistence that she be paid $50,000 pursuant to the prior New York State Court Order, there is no evidence that Mrs. Sontag substantially delayed the sale of the property. On the contrary, it appears that pre-petition, Mrs. Sontag was eager to have the property sold. She permitted sales agents to enter the property weekdays between the hours of 5:00 p.m. and 7:00 p.m. and Saturdays between the hours of 10:00 a.m. and 5:00 p.m. In August, 1988 she turned over the keys to a broker retained by the Debtor and made attempts to purchase a new house for which she needed the proceeds from the sale of the marital residence.

(Defendant's Exhibits "M", "N" and "O"). Further, in October of 1988, Mrs. Sontag sought to have the Debtor held in contempt for failure to sell the property. (Defendant's Exhibit "X").

In this Court's view, post-petition, Mrs. Sontag's insistence on receiving $50,000 from the Trustee at the closing of the sale of the property did little to delay the Trustee's sale. The Trustee eventually did obtain an Order of this Court to proceed with the sale and place the $50,000 in escrow pending further determination by the Court. There is no reason why the Trustee could not have moved for this relief earlier in the Debtor's case. In light of the prior New York State Court Order which granted Mrs. Sontag $50,000 upon the sale of the property, it was not unreasonable, absent any contrary order of this Court, for her to insist that she be paid at the closing. Thus, Mrs. Sontag is not liable for any diminution of value of the property due to any delay of the sale pre or post-petition.

### POST–PETITION USE AND OCCUPANCY

The Trustee also seeks to hold Mrs. Sontag liable for reasonable use and occupancy of the property from the date of the Debtor's petition until she vacated the premises.

The parties have agreed that the fair market rental value of the property during the period would have been approximately $1,500 per month.

 Occupancy by one of the tenants in common does not, in and of itself, make the occupant liable to the co-tenant for either rental payments or use and occupancy payments. *Oliva v. Oliva*, 136 A.D.2d 611, 523 N.Y.S.2d 859, 860 (App.Div. 2nd Dept.1988). A court could direct that an ex-spouse maintain her exclusive possession of the marital residence in order to ensure her welfare until the time of sale without continuing the cotenancy. *Id.*, 523 N.Y.S.2d at 860. In 1988, the New York State Court granted Mrs. Sontag exclusive occupancy of the property pending the sale and until three days after the closing. No provision was made by that court for the payment of rent or use and occupancy by

Mrs. Sontag to the Debtor. It was clearly not the intention of the State Court that the Debtor be reimbursed for Mrs. Sontag's occupation of the premises, thus leading this Court to conclude that Mrs. Sontag's right to exclusive use and occupancy was in lieu of additional maintenance or support payments. Mrs. Sontag's only obligation regarding possession of the premises, other than maintenance which was discussed earlier, was that she vacate the premises prior to a sale or no later than three days after the closing. The mere fact that the Debtor filed a petition in this Court neither alters nor enlarges that obligation. The Trustee in a bankruptcy case stands in the shoes of the Debtor, and does not have any greater rights than the Debtor would have if there were no bankruptcy filing. *See Hays and Co. v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, 885 F.2d 1149, 1154 (3rd Cir.1989) (the trustee's rights against others are not expanded beyond what exists at the commencement of the case); and *In re Coombs*, 86 B.R. at 317. Thus, Mrs. Sontag is not liable to the Trustee for either post-petition rent or use and occupancy of the premises.

### CONCLUSION

1. This Court has jurisdiction over the subject matter and parties pursuant to Sections 1334 and 157 of the Bankruptcy Code.

2. By prior Order of the New York State Court, Mrs. Sontag had a vested right to $50,000.00 of proceeds from the sale of the Debtor's property, and such proceeds were not property of this Debtor's estate pursuant to Section 541 of the Bankruptcy Code.

3. Under New York State law, Mrs. Sontag had a duty to maintain property over which she had exclusive possession. Her failure to reasonably maintain the property resulted in a diminution of value of the property by $35,000. That amount shall be subtracted from and set off against the $50,000 currently being held in escrow by the Trustee and the balance of $15,000 shall be immediately paid to Mrs. Sontag. The balance of the funds held by the Trustee shall be distributed after costs

**670**

and expenses of administration of this Estate as allowed by this Court, to lien creditors in the order of priority pursuant to New York State Law.

4. The Court finds no liability on the part of Mrs. Sontag for post-petition use and occupancy payments and directs that the Trustee subtract no amount from that due Mrs. Sontag for her exclusive possession of the premises post petition prior to the sale.

Settle an Order in conformity with this decision.