## LEE ADAMO *v.* EMILIO ADAMO
## (AC 29645)

Gruendel, Alvord and West, Js.

Argued January 12—officially released August 3, 2010

*James H. Lee,* for the appellant (defendant).

*George J. Markley,* for the appellee (plaintiff).

*Opinion*

WEST, J. In this marital dissolution matter, the defendant, Emilio Adamo, appeals from the trial court's rulings on various postjudgment motions filed by both him and the plaintiff, Lee Adamo. The defendant claims that the court (1) applied an incorrect legal standard in determining the extent of the plaintiff's liability for damage and deferred maintenance to the marital home during her court-ordered exclusive possession, (2) improperly denied his motion for contempt and (3) improperly granted the plaintiff's motion for attorney's fees. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history provide the necessary backdrop for our resolution of the defendant's appeal. The parties were married on May 7, 1994. Prior to the marriage, the defendant owned three pieces of real estate. He owned a commercial property on Magee Avenue in Stamford, a residence in Westport and another residence in Amagansett, New York. During their marriage, the parties resided in the Westport residence. On November 26, 2001, the defendant vacated that residence. On June 4, 2003, the plaintiff commenced the dissolution action. The plaintiff filed, on August 5, 2003, a motion for exclusive use and possession of the Westport residence pendente lite. The court granted that motion on August 18, 2003.

On July 7, 2005, the court rendered judgment dissolving the parties' marriage by way of a memorandum of decision. The parties sought an order of property distribution on the basis of the appreciation of the three pieces of real estate that the defendant had owned prior to the marriage. After the court considered the plaintiff's age, lack of assets, lack of vocational skills, health, estate, liabilities and needs in comparison with those of the defendant, it awarded her a lump sum payment of $374,705.24, equal to 35 percent of the appreciation of the properties.[1] The court ordered the defendant to pay the plaintiff by October 7, 2005. The court also ordered that until the lump sum payment was paid in full, the plaintiff would continue to reside in the Westport residence and that the defendant would continue to pay the mortgage and taxes due on the residence. It further ordered that the plaintiff immediately would vacate the residence when the lump sum was paid in full. Also, the court incorporated by reference into the judgment the parties' November 16, 2004 stipulation concerning personal property.

On July 20, 2005, the plaintiff filed a motion for reconsideration in which she sought, inter alia, a recalculation of her lump sum payment, alleging that the court miscalculated the appreciation of the Westport residence. By memorandum of decision filed March 2, 2006, the court found that it had miscalculated the appreciation of the Westport residence and that the correct amount that the residence had appreciated was $635,000. Therefore, it ordered a recalculated lump sum payment to the plaintiff in the amount of $562,450. The plaintiff also requested that the court reconsider its order for the payment of the lump sum because it did not afford her

[1] The court found that the appreciation of the Westport property was $98,086.49, the appreciation on the Amagansett property was $635,000 and the appreciation on the Stamford property was $337,500. Therefore, it found that the total appreciation on all three properties was $1,070,586.40.

any security to collect and gave her no funds in order to relocate from the Westport residence. The court concluded that, in the original order, it should have provided the plaintiff with an advance of moneys from the lump sum payment in order to assist in her relocating from the Westport residence. As a result, the court ordered the defendant to deposit $562,450, the entire lump sum payment, with a third party escrow agent mutually agreeable to both parties on or before March 24, 2006. The court further ordered that the plaintiff could draw money from the account for a down payment on a new residence and that upon receipt of the total funds in escrow, the plaintiff would have thirty days to relocate from the Westport residence.

Subsequent to the revised financial orders, the parties filed several postjudgment motions, their resolution forming the basis of this appeal. On May 17, 2006, the plaintiff filed a motion seeking reimbursement for the attorney's fees she incurred pursuing her motion to reconsider the original financial orders. Then, on June 20, 2006, the plaintiff filed a motion seeking postjudgment interest pursuant to General Statutes § 37-1 on the revised financial orders from the date of the dissolution judgment. On July 3, 2006, the defendant filed a motion for contempt, alleging the plaintiff's wilful refusal to comply with the parties' stipulation concerning the division of their personalty that was incorporated into the dissolution judgment. On July 11, 2006, the parties entered into a stipulated order so as to resolve the remaining issues concerning the disbursement of the parties' personalty. That stipulated order provided that it represented the complete, final and satisfactory disposition of all personalty. On November 2, 2007, the defendant filed a motion for contempt for the plaintiff's wilful failure to comply with the stipulated order.

On July 10, 2006, the defendant, because of the previous motion, filed a motion for reimbursement for damages caused and maintenance deferred by the plaintiff

while she resided at the Westport residence pursuant to the dissolution judgment.[2] In that motion, the defendant requested that the court order that $100,000 of the lump sum payment be retained in escrow in order that funds would be available for the plaintiff to compensate the defendant for the alleged damages and deferred maintenance. Subsequently, the court ordered $50,000 to remain in escrow. On July 20, 2007, the defendant filed a motion seeking the disbursement of the funds in escrow in order to compensate him for the damages and deferred maintenance alleged in his July 10, 2006 motion. See footnote 2 of this opinion. Next, on September 27, 2007, the plaintiff filed a motion seeking attorney's fees incurred in responding to the defendant's various motions filed subsequent to the court's entering the revised financial orders.

The court held hearings on those motions on January 25 and 29, 2008, during which testimony was heard and exhibits were entered into evidence. On January 29, 2008, the court ruled from the bench and issued written orders on the motions. The court denied the plaintiff's May 17, 2006 motion for attorney's fees incurred in pursuing her motion to reconsider the original financial orders. In response to the plaintiff's June 20, 2006 motion for postjudgment interest on the revised financial orders, the court declined to order interest dating back to the dissolution judgment. The court, however, ordered statutory interest only on that portion of the $50,000 that had been held in escrow that eventually was paid to the plaintiff. Next, finding that the defendant had failed to carry his burden of proof, the court denied his July 3, 2006 and November 2, 2007 motions for contempt concerning the return of his personalty. The

[2] In the motion, the defendant alleged damages in the amount of $94,850 on the basis of a court-ordered inspection by a contractor, a landscaper and a painter.

court, however, granted the plaintiff's motion for attorney's fees and ordered the defendant to make a $10,000 contribution toward the plaintiff's counsel fees. Last, the court ordered $4427 to be deducted from the escrow and paid to the defendant for the damages for which, the court determined, the defendant had proven the plaintiff was liable, with the balance, plus interest, to be disbursed to the plaintiff.[3] We address each of the defendant's claims on appeal in turn. Further facts will be set forth as necessary.

I

The defendant first claims that the court applied an incorrect legal standard in determining the extent of the plaintiff's liability for damage and deferred maintenance to the marital home during her court-ordered exclusive possession. We disagree.

The following additional facts aid in our resolution of the defendant's claim. The court, in its January 29, 2008 written order, concluded that the plaintiff had a duty not to wilfully damage the property. It also found that there was normal wear and tear that had occurred during the marriage that was not the responsibility of the plaintiff. The court addressed in its oral ruling the defendant's motions regarding the alleged damage and deferred maintenance to the Westport residence but

---

[3] It is clear that the court determined the damages to be the cost of repairs submitted by the defendant with no consideration of diminution in value. We note, however, that under Connecticut law, "[d]amage to real estate is measured by the diminution in value to the [owner's] property caused by the tortious acts . . . . Diminution in value *may* be determined by the cost of repairs, so long as the cost does not exceed the former value of the property and the repairs do not enhance the value higher than it was prior to the damage." (Emphasis added; internal quotation marks omitted.) *Schlichting* v. *Cotter*, 109 Conn. App. 361, 371 n.9, 952 A.2d 73, cert. denied, 289 Conn. 944, 959 A.2d 1009 (2008); 2 D. Pope, Connecticut Actions and Remedies, Tort Law (1993) § 26:04, p. 26-6. Because neither party has raised a claim with respect to the court's method of determining the damages, we need not consider this issue.

did not state the legal standard on which it determined the plaintiff's liability. The court, however, found that the plaintiff was responsible for $4427 of damage that had occurred during her exclusive possession of the Westport residence.[4] It ordered that amount deducted from the escrow account with the remainder, plus interest, to be paid to the plaintiff. On February 15, 2008, the defendant timely filed this appeal. On March 24, 2008, the defendant filed a motion for articulation in which he requested, among other things, that the court articulate what legal standard it used to determine the plaintiff's liability. The court granted the motion and, on May 9, 2008, articulated that it "looked to housing law, at [General Statutes] § 47a-24, as instructive for damages beyond reasonable wear and tear." On September 25, 2008, the defendant filed, with this court, a motion for permission to file a late motion for further articulation with the trial court, in which he noted that "the pertinence of [§ 47a-11] is not readily apparent" This court granted that motion on December 10, 2008. On January 7, 2009, the trial court articulated that its previous citation to § 47a-24 was an inadvertent scrivener's error. It went on to state that the court "looked for guidance at housing law, specifically, the case law emanating from [General Statutes] § 47a-11, the statute on tenant's responsibilities and landlord's actions for the recovery of damages, as instructive regarding claims for damage that exceeded normal wear and tear." The defendant bases his claim on that articulation.

As a preliminary matter, we set forth the standard of review and legal principles relevant to our discussion. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court

---

[4] The court found that the defendant had proven damages that amounted to $4427 for a broken window, water damage to a floor that resulted from that broken window and the cost of cleaning marble and stone tiles of melted wax.

orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Internal quotation marks omitted.) *Schade* v. *Schade*, 110 Conn. App. 57, 62, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008). On appeal, the defendant argues that the court should have relied on General Statutes § 52-563, which concerns liability for waste by a tenant for life or years,[5] in its determination of the plaintiff's liability. The defendant also argues that the court erred when it looked to § 47a-11[6] for guidance in making that determination. The plaintiff argues that the defendant raises the applicability of § 52-563 to the determination of the plaintiff's liability for damages for the first time on appeal and, therefore, that claim should not be considered. Moreover, the plaintiff contends, the court's reliance on § 47a-11 for guidance in its determination was not an abuse of its discretion. We agree with the plaintiff.

Our rules of practice require that a party "intending to raise any question of law which may be the subject of an appeal must either state the question distinctly to the judicial authority in a written trial brief . . . or state the question distinctly to the judicial authority on the record before such party's closing argument and

---

[5] General Statutes § 52-563 provides: "Any person who, having no greater interest in real property than an estate for years, or for life, created by the act of the parties and not by the act of the law, commits waste upon the premises, beyond what tenants for years or life created by operation of law may do, shall be liable to the party injured in an action on this section, unless he was expressly authorized, by the contract under which the interest is created, to do the acts complained of."

[6] General Statutes § 47a-11 provides in relevant part: "A tenant shall . . . (f) not wilfully or negligently destroy, deface, damage, impair or remove any part of the premises or permit any other person to do so . . . ."

within sufficient time to give the opposing counsel an opportunity to discuss the question. . . ." Practice Book § 5-2. It is axiomatic that issues not properly raised before the trial court ordinarily will not be considered on appeal. Practice Book § 60-5; see also *Traggis* v. *Shawmut Bank Connecticut, N.A.*, 72 Conn. App. 251, 264, 805 A.2d 105 ("we ordinarily will not review an issue that has not been properly raised before the trial court" [internal quotation marks omitted]), cert. denied, 262 Conn. 903, 810 A.2d 270 (2002); cf. *State* v. *Scruggs*, 279 Conn. 698, 718, 905 A.2d 24 (2006) (for any appellate theory to withstand scrutiny it must have been presented at trial as coherent theory to court in focused or otherwise cognizable sense).

On the basis of our review of the record, we conclude that the defendant did not raise properly the applicability of § 52-563 to the court. Nowhere is that statute referred to in any motion or brief submitted to the court, nor was it brought up during the hearing before the court by the defendant. In his reply brief, the defendant contends that in closing argument, his presentation to the court of a copy of *In re Sontag*, 151 B.R. 664 (Bankr. E.D.N.Y. 1993), distinctly raised to the court the issue of waste and, in turn, the applicability of § 52-563. This is so, the defendant avers, because the court, in the colloquy with the defendant's counsel discussing that case, used the term "wasting" twice, indicating that it had read the case, and, therefore, the issue was distinctly raised. Our review of that case, the whole of the defendant's closing argument and the transcripts of the hearing, lead us to conclude that the issue was not distinctly raised, and, therefore, we will not review that claim on appeal. See *Traggis* v. *Shawmut Bank Connecticut, N.A.*, supra, 72 Conn. App. 264; see also *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004) ("[f]or this court to . . . consider [a] claim on the basis of a specific legal ground

not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party" [internal quotation marks omitted]), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

First, we note that the *In re Sontag* court stated that under New York law, marital premises, unless otherwise stated, are held by both the husband and wife as tenants by the entirety and, when the marital relationship is terminated by divorce, the tenancy is severed and the parties become tenants in common of the property. *In re Sontag*, supra, 151 B.R. 668, citing *McDonald* v. *Driscoll*, 103 Misc. 2d 567, 569, 426 N.Y.S.2d 678 (1980). Moreover, under New York law, where no provision is made in a divorce decree as to the responsibility for house maintenance repairs, such duty falls on the cotenant in sole possession. Id. Nowhere in that decision does the term waste appear, nor does it make any reference to a New York statute comparable to our § 52-563. Furthermore, when the defendant's counsel presented the court with a copy of the *In re Sontag* opinion, he purported that the opinion indicated that when a court orders exclusive possession of the marital home to a party, that party, unless it is otherwise ordered, has the duty to maintain the property. During his closing argument, the defendant's counsel, on several occasions stated that the legal standard applicable to that determination was whether there was wilful neglect on the part of the plaintiff. As a result, we find no support for the defendant's assertion that the applicability of § 52-563 was distinctly raised before the court by his submission to the court of a copy of *In re Sontag* during closing argument. Because, however, the defendant also claims on appeal that the court's looking to § 47a-11 was an abuse of its discretion, this determination does not end our inquiry.

Essentially, the defendant next argues that the court incorrectly looked to § 47a-11 for guidance in determining the plaintiff's liability because it sets out the rights

and duties of landlords and tenants. As a result, he continues, the parties fail to meet the statute's definitional requirements so as to fall within its purview. First, the defendant categorizes incorrectly the court's reliance on § 47a-11. The court stated in its January 7, 2009 articulation that it *"looked for guidance* at housing law, specifically, the case law emanating from [General Statutes] § 47a-11, the statute on tenant's responsibilities and landlord's actions for the recovery of damages, as *instructive* regarding claims for damage that exceeded normal wear and tear." (Emphasis added.) The defendant has failed to point out, nor have we found, any precedent stating that a trial court cannot look to analogous statutory provisions when, as the parties indicated in their respective briefs, there are no statutes or cases directly on point. Cf. *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 789, 967 A.2d 1 (2009) (court looked to available authorities when parties' briefs and its independent research revealed no case directly on point); *State* v. *Griggs*, 288 Conn. 116, 130 n.17, 951 A.2d 531 (2008) (when research revealed no case directly on point, court looked to analogous cases); see also *LaFlamme* v. *Dallessio*, 261 Conn. 247, 256, 802 A.2d 63 (2002) (indicating that relationship that arose between executor and decedent's surviving spouse by operation of Probate Court decrees pursuant to General Statutes § 45a-321 for use of marital home for one year term analogous to a landlord-tenant relationship).

The defendant sought reimbursement for, among other things, replenishing the heating oil, replacement light bulbs, interior and exterior painting costs, refinishing floors, gravel for the driveway, costs for landscaping and gutter cleaning, along with those items for which he was reimbursed. His counsel argued that it was the plaintiff's wilful negligence in attending to the marital home's maintenance and upkeep while she was

in exclusive possession that caused the damages. The court, after hearing testimony and admitting exhibits, found that the defendant had proven only those damages brought about by the plaintiff's wilful conduct and not those that resulted from wear and tear. On the basis of the record before us, we cannot conclude that the court abused its discretion when it articulated that it looked to § 47a-11 for guidance in resolving the defendant's claim that the plaintiff wilfully or negligently damaged any part of the premises while she was in exclusive possession.

II

Next, the defendant claims that the court improperly denied his motion for contempt. We disagree.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [plaintiff] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, 77 Conn. App. 582, 590, 823 A.2d 1274 (2003). A finding that a person is or is not in contempt of a court order depends on the facts and circumstances surrounding the conduct. The fact that an order has not been complied with fully does not dictate that a finding of contempt must enter. See *Marcil* v. *Marcil*, 4 Conn. App. 403, 405, 494 A.2d 620 (1985). "[It] is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (Internal quotation marks omitted.) *Dowd* v. *Dowd*, 96 Conn. App. 75, 82, 899 A.2d 76, cert. denied, 280 Conn. 907, 907 A.2d 89 (2006). It therefore is necessary, in reviewing the propriety of the court's decision to deny the motion for contempt, that we

review the factual findings of the court that led to its determination. The clearly erroneous standard is the well settled standard for reviewing a trial court's factual findings. "A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Legnos* v. *Legnos*, 70 Conn. App. 349, 353 n.2, 797 A.2d 1184, cert. denied, 261 Conn. 911, 806 A.2d 48 (2002).

On the basis of our review of the record, we cannot conclude that the court's factual findings that led to its determination were clearly erroneous. During the hearing, the defendant testified that he was allowed to enter the residence, on June 30, 2006, in anticipation of his regaining exclusive possession under the dissolution judgment in order to photograph, inter alia, the personalty in the home. On the basis of that incident, the parties, on July 11, 2006, entered into the stipulated order concerning the disbursement of the parties' personalty. That court-ordered stipulation indicated that "[a]ll personalty in the [marital residence] (assigned to [the defendant]) which was seen on June 30, 2006 and photographed by [the defendant] will remain [in the marital residence] except for a grey, framed Sybil Nestor painting, which shall belong to [the plaintiff]." In its oral ruling, the court stated that the only evidence presented that concerned personalty was submitted by the plaintiff or consisted of photographs presented as exhibits by the defendant depicting the damage to the residence and not the photographs he had taken on June 30 cataloguing the personalty that was to remain in the marital residence. The court found that "the proof before the court did not include anything [that] was seen by [the defendant] on June 30, and photographed

by him . . . ." The court determined that the defen-
dant, therefore, had not met his burden of proof and
denied the claim.

On appeal, the defendant claims that there was evi-
dence before the court concerning one item of person-
alty—a framed Willem de Kooning poster—and,
therefore, the court's ruling as to that item was clearly
erroneous. The defendant refers to the transcript of the
hearing to support his contention that he photographed
this item during his June 30 visit to the residence and
that the photograph was submitted to the court as a
full exhibit.[7] Initially, we note that it was admitted into
evidence during a portion of the hearing when several
photographs were submitted by the defendant that
showed the damage to the residence that he alleged.
Moreover, that exchange, during which a photograph
was submitted into evidence, was the sum total of testi-
mony concerning that photograph.[8] The defendant

[7] At the hearing on the defendant's motion for contempt, the following
exchange discussing a photograph being entered into evidence as a full
exhibit took place:

"[The Defendant's Counsel]: And did you take that picture?

"[The Defendant]: Yes, I did.

"[The Defendant's Counsel]: And did you take it at about the same time
as the other pictures?

"[The Defendant]: No. I took that prior to me taking over the house. I
was allowed to go out to the house and take pictures.

"[The Defendant's Counsel]: That was on June 30?

"[The Defendant]: Yes, when I went there. That's right, June 30.

"[The Defendant's Counsel]: Who was the artist?

"[The Defendant]: [de Kooning], Willem [de Kooning].

"The Court: Not one of my favorites, but I have heard of him.

"[The Plaintiff's Counsel]: No objection.

"[The Defendant's Counsel]: I'll offer it, Your Honor.

"The Court: Thank you."

[8] We note that the record does not indicate the exhibit number assigned
to that photograph admitted during the exchange set out in footnote 7 of
this opinion. Although the defendant purports that exhibit to have been
admitted as "defendant's exhibit RRR," our review of the record shows that
exhibit described as a "Photo–Painting." That exhibit appears to depict
a framed poster from the Guild Hall Museum, Easthampton, New York,
portraying a replica of an artwork.

never testified that the exhibit depicted his personalty that was the subject of his motion, that it was missing or, if it was missing, that the plaintiff had wilfully taken it or refused to return it to him. See *Lehan* v. *Lehan*, 118 Conn. App. 685, 985 A.2d 378 (2010) (trial court determines whether violation of court order was wilful or excused by good faith dispute or misunderstanding when rendering judgment of contempt). Therefore, we conclude that the court did not abuse its discretion in failing to find that the plaintiff was in contempt of a court order.

### III

Last, the defendant claims that the court improperly granted the plaintiff's motion for attorney's fees. We disagree.

The plaintiff's September 27, 2007 motion sought attorney's fees incurred as a result of the defendant's postjudgment motions that are the subject of this appeal. Specifically, the plaintiff sought fees expended in response to the motions that concerned the alleged damage to the marital residence and the $50,000 of her lump sum payment that remained in escrow. The court, in its oral decision, ordered the defendant to pay $10,000 toward the plaintiff's attorney's fees, finding the defendant's "continued refusal to return the lion's share of the escrow to have been unreasonable . . . and held [the plaintiff] to an unfair standard." In his March 24, 2008 motion for articulation, the defendant requested that the court articulate on what statutory grounds it relied in making its award of attorney's fees. The court, in granting the motion, articulated that it relied on General Statutes § 46b-62. On appeal, the defendant argues essentially that because the plaintiff had ample liquid funds as a result of the financial orders, she was financially able to pay her own attorney's fees; therefore, the court abused its discretion in granting the motion.

Moreover, he contends that the court made no finding that an award of fees was necessary in order to avoid undermining the financial orders and that there is nothing in the record to support such a finding. We disagree.

Section 46b-62 vests in the trial court the discretion to award attorney's fees.[9] "Our Supreme Court has included within the definition of attorney's fees allowable under § 46b-62 certain costs of litigation, including expert witness fees. . . . The criteria to be considered in determining whether an award of attorney's fees is appropriate [are set forth in General Statutes § 46b-82 and] include the age, health, station, occupation, amount and sources of income, vocational skills, employability [and] estate and needs of each of the parties . . . . We review the court's awarding of attorney's fees under the abuse of discretion standard. . . . The ultimate issue in our review, therefore, is whether the court reasonably could have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Rozsa* v. *Rozsa*, 117 Conn. App. 1, 18, 977 A.2d 722 (2009). "Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine [the court's] prior financial orders . . . ." (Internal quotation marks omitted.) *Lopiano* v. *Lopiano*, 247 Conn. 356, 378, 752 A.2d 1000 (1998). In *Bornemann* v.

---

[9] General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of this chapter . . . the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. . . ."

*Bornemann*, 245 Conn. 508, 542, 752 A.2d 978 (1998), our Supreme Court specifically held that "such findings do not have to be explicit as long as the record would support a finding that the party to whom the award of attorney's fees is made lacks sufficient liquid assets with which to pay his or her attorney's fees or that the failure to award such fees would undermine the court's other financial orders." *Bee* v. *Bee*, 79 Conn. App. 783, 791, 831 A.2d 833, cert. denied, 266 Conn. 932, 837 A.2d 805 (2003).

Here, on the basis of our review of the entire record, it is clear that the record supports a finding that failure to award attorney's fees to the plaintiff would have undermined the court's financial orders. The court's financial orders were based on the appreciation during the term of the marriage of the three properties the defendant owned prior to the marriage. Although the court declined to find fault with either party for the breakdown of the marriage, it considered the plaintiff's age of sixty-three at the time of dissolution, her lack of assets, her lack of vocational skill,[10] her health,[11] estate, liabilities and needs in comparison to the defendant's in fashioning its financial orders. Moreover, the court expressly found that the defendant, in seeking to keep $50,000 of the lump sum payment he owed the plaintiff in escrow for alleged damages to the marital home during her exclusive possession, was both unreasonable and unfair to the plaintiff. In other words, the underlying conduct of the defendant that led to the plaintiff's motion for attorney's fees undermined the court's financial orders.

In sum, the court reasonably could have concluded that the failure to award the plaintiff $10,000 in legal

[10] The court noted that the plaintiff was, at the time of the dissolution, working twelve to fifteen hours per week in sales at a store and earning $15 an hour.

[11] The court found that at the time of the dissolution, the plaintiff was being treated for depression and anxiety.

fees would have undermined the court's other financial orders, which essentially sought to achieve a fair distribution of the appreciation in the property. See id., 792. Moreover, such a distribution was entirely reasonable in light of the court's findings regarding the parties' relative skills, employability and earning capacities. Consequently, the award of attorney's fees did not constitute an abuse of the court's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.