ROBERT LABULIS, ZONING ENFORCEMENT
OFFICER OF THE TOWN OF NORTH
BRANFORD *v.* PHYLLIS KOPYLEC
(AC 30374)
(AC 31134)

DiPentima, C. J., and Lavine and Lavery, Js.

Argued October 25, 2010—officially released May 17, 2011

*Vincent T. McManus, Jr.*, for the appellant (defendant).

*John M. Gesmonde*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, C. J. These consolidated appeals arise out of a long-standing and increasingly acrimonious zoning dispute between the parties. In AC 30374, the defendant, Phyllis Kopylec, appeals from the trial court's denial of her motion to dismiss the case and her motion to open the stipulated judgment and remand the case for a trial. On appeal, the defendant claims that the court (1) improperly denied her motion to dismiss and motion to open and remand for a trial for

failure to join an indispensable party and (2) was without subject matter jurisdiction ab initio because the plaintiff, Robert Labulis, the zoning enforcement officer of the town of North Branford (town),[1] commenced his action before allowing for the exhaustion of remedies contained in General Statutes § 8-7 and the town's zoning regulations. In AC 31134, the defendant appeals from the denial of her motion for contempt and claims that the court, *Hon. William L. Hadden, Jr.*, judge trial referee, erroneously interpreted a previous order of the court, entered by *Pittman, J.* We disagree and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of these appeals. On April 12, 2002, the plaintiff filed a complaint with the court and an application for a temporary injunction seeking to have the defendant comply with the terms of a cease and desist order he had served upon her. Specifically, the plaintiff sought to restrain and prohibit the defendant from engaging in grading and filling activity on property located at 944 Totoket Road, North Branford (property).[2] The complaint was served only on the defendant although the defendant's husband, Joseph Kopylec, a one-third owner of the property, had been served with a cease and desist order on October 5, 2001.[3]

On May 13, 2002, at a hearing on the plaintiff's application for a temporary injunction, the defendant acknowledged that the parties had reached an agreement. The terms of the agreement were presented to the court,

---

[1] The trial court granted the plaintiff's motion to substitute Carol A. Zebb, the acting zoning enforcement officer of the town, as the plaintiff in 2005. We will refer to Robert Labulis as the plaintiff for purposes of this opinion.

[2] The plaintiff claimed that grading and filling activity occurring on the property was changing the contours of the land so that runoff water that had previously collected in a small pond on the property was being diverted and flooding the property of adjacent landowners.

[3] At the time, the defendant, Joseph Kopylec and their son, Rocklan Kopylec, each owned a one-third interest in the property.

and the court canvassed the defendant to ensure that she was in accord with them. On June 5, 2002, a stipulation for judgment was filed with the court, wherein the parties agreed that a permanent injunction would enter against the defendant enjoining her, her servants, agents and employees from any additional filling or grading of the property.[4] The court, *Munro, J.*, approved the stipulation and rendered judgment in accordance with it on June 13, 2002.

Thereafter, the defendant failed to comply with the terms of the stipulated judgment, and on May 21, 2003, the plaintiff filed a motion for contempt.[5] A hearing on the matter was held before Judge Munro on June 9, 2003, and another agreement was reached. The plaintiff presented the terms of the agreement to the court, specifically stating that "the defendant acknowledges that this order applies to not only herself, but to her husband, which he is actually acting on her behalf, and her son, as agents of the defendant." Although not present in court, the defendant, acting through counsel, agreed to a finding of contempt and again agreed to have an A-2 survey map prepared, devise a regrading plan and apply for a temporary special use permit pursuant to the 2002 stipulated judgment. The defendant's attorney also informed the court that Joseph Kopylec was present and had full authority to bind the defendant to the terms of the new agreement. The court noted that

[4] The defendant also agreed to retain a licensed land surveyor and civil engineer to prepare an A-2 survey map by August 1, 2002, submit an application for a temporary special use permit for grading and filling, comply with the planning and zoning commission's decision with respect to this application and complete all necessary remedial work to reestablish a " 'small pond' " on the property to the satisfaction of the plaintiff.

[5] In a letter to the defendant's attorney, dated April 29, 2003, Joseph Kopylec explained that the defendant was "not able to handle" her obligations under the stipulated judgment and that he held power of attorney to act on her behalf. The letter also requested that the attorney inform the plaintiff that all correspondence relating to the stipulated judgment be addressed to Joseph Kopylec.

Joseph Kopylec was a one-third owner of the property and canvassed him to ensure that he also agreed to the terms.[6] The court then found the defendant in contempt and approved, as a court order, new deadlines for completion of the items contained in the 2002 stipulated judgment.

The defendant failed to comply with both the 2002 stipulated judgment and the 2003 contempt order and the plaintiff filed a second motion for contempt on March 22, 2004.[7] In the meantime, on July 18, 2003, the defendant, Joseph Kopylec and Rocklan Kopylec, transferred, by quitclaim deed, all of their interests in the property to the defendant and Joseph Kopylec. On November 9, 2004, the plaintiff filed a third motion for contempt, alleging that the defendant continued to be in violation of two previous court orders.[8]

On November 22, 2004, at a hearing held on the plaintiff's third motion for contempt, the defendant admitted that she had not complied with the terms of the court orders and claimed that she was financially unable to do

---

[6] The record reveals the following colloquy between the court and Joseph Kopylec:

"The Court: Okay, [Joseph] Kopylec, you understand that as a property owner, even though you're not presently a named party, that you can be cited in and held as responsible for these things as Phyllis Kopylec?

"[Joseph] Kopylec: I do.

"The Court: And so therefore, do you agree with everything that was related on the record by [the plaintiff] as something you can comply with?

"[Joseph] Kopylec: It is.

"The Court: All right. And [do] you understand that if you fail to comply, if the matter comes to court for further findings in contempt you'll be cited in as a party and be facing contempt of court? You understand that?

"[Joseph] Kopylec: Yeah.

"The Court: All right. So you can do all of these things, right?

"[Joseph] Kopylec: As long as I'm not hospitalized before."

[7] The record does not indicate what, if any, action was taken on this motion.

[8] The plaintiff based his claim on the defendant's failure to (1) prepare an A-2 survey map, (2) submit an application for a temporary special use permit and (3) submit a regrading plan.

so. The plaintiff then proposed that, in lieu of entering another finding of contempt, Judge Pittman could issue an order that would enable the town to enter the property and perform the remedial work, payment for which was to be secured by the placement of a lien on the property. Judge Pittman canvassed the defendant before adopting the plaintiff's proposal. Joseph Kopylec was not present at this hearing.[9]

On January 20, 2005, the defendant filed a motion to open judgment and dismiss the case, claiming that Joseph Kopylec was an indispensable party and that the plaintiff's failure to join him deprived the court of subject matter jurisdiction over the action. After determining that Joseph Kopylec was an indispensable party, Judge Pittman denied this motion on July 29, 2005. Shortly thereafter, in a letter dated August 4, 2005, Joseph Kopylec informed the plaintiff that he, as part owner of the property, denied the town permission to enter the property and any attempt to enter and conduct remedial work would "be considered a trespass which shall be repelled by all reasonable means . . . ." On August 29, 2005, the defendant, by quitclaim deed, assigned all of her interest in the property to Joseph Kopylec, who, consequently, became the sole owner of the property.

Between August 5, 2005, and September 12, 2005, both parties filed motions,[10] and a hearing before Judge Pittman was held on September 19, 2005. At this hearing, the court recognized that the plaintiff's failure to

---

[9] On July 29, 2005, the plaintiff filed and Judge Pittman approved the order issued pursuant to the November 22, 2004 hearing. The order was recorded on the town land records on August 8, 2005. This order is the subject of a separate appeal that is pending before this court.

[10] The record shows that on August 26, 2005, the defendant filed a motion to stay proceedings and noticed a deposition of the plaintiff. In response, on September 1, 2005, the plaintiff filed a motion for a protective order and a motion to quash and an objection to production request.

cite Joseph Kopylec into the action continued to make the enforcement of the court's orders problematic. The court determined that allowing the town "to go on this property on some theory that [Joseph] Kopylec is bound by a judgment . . . in which he was never a named defendant is not the best way to proceed." The court concluded that, if the plaintiff wanted to enforce the court's prior orders, the plaintiff should first obtain judgment against Joseph Kopylec as he was an owner of the property at the time the 2002 stipulated judgment was entered. Accordingly, the court issued an order finding Joseph Kopylec "a necessary and indispensable party to the full resolution of the dispute over the use of the property" and stayed all "substantive proceedings related to the enforcement of the previous orders of this court until such time as Joseph Kopylec is joined as a party to this action." That order is not challenged on appeal.

Thereafter, on November 27, 2006, the defendant filed another motion to dismiss claiming, again, that the failure to join Joseph Kopylec, a necessary and indispensable party, deprived the court of subject matter jurisdiction over the action. On January 30, 2007, the defendant filed a motion to open judgment and remand for a trial, claiming, in the alternative, that principles of due process required that Joseph Kopylec be made a party. In a consolidated memorandum, the court, *Corradino, J.*, denied the defendant's motions on September 10, 2008, and the defendant appealed to this court. Then, on December 23, 2008, the defendant filed a motion for contempt against the plaintiff, alleging that the failure to cite Joseph Kopylec into the action was wilful noncompliance with the court's September 19, 2005 order. After a hearing, Judge Hadden denied the defendant's motion on April 23, 2009, and the defendant filed a separate appeal to this court.

I

## AC 30374

In AC 30374, the defendant claims that the trial court improperly denied her November, 2006 motion to dismiss the case for lack of subject matter jurisdiction, and her January, 2007 motion to open the stipulated judgment and remand the case for a trial for failure to join an indispensable party.[11] Specifically, the defendant contends that Joseph Kopylec was a necessary and indispensable party to the stipulated judgment and she argues that, pursuant to our rules of joinder, due process required that he be joined to the action. We disagree.

The defendant's claim that the court improperly denied her motion to dismiss for lack of subject matter jurisdiction warrants little discussion. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *St. Paul's Flax Hill Co-operative* v. *Johnson*, 124 Conn. App. 728, 734, 6 A.3d 1168 (2010), cert. denied, 300 Conn. 906, 12 A.3d 1002 (2011). It is well established that the failure to serve or name an indispensable party does not deprive a court of subject matter jurisdiction over an action,

---

[11] We summarily dismiss the defendant's second claim that the court lacked subject matter jurisdiction over the plaintiff's action ab initio because the plaintiff failed to permit the exhaustion of administrative remedies in the town's zoning regulations prior to filing his complaint. The plaintiff brought an action for injunctive relief pursuant to General Statutes § 8-12, which "empowers [zoning enforcement] officers to seek relief, that is, to take overt action in order to compel compliance with the zoning laws. The officers can act on their own initiative, and do not act merely in response to an appeal . . . ." *Planning & Zoning Commission* v. *Campanelli*, 9 Conn. App. 534, 537, 520 A.2d 242 (1987). "[Section 8-12] expressly provides that the officer may seek injunctive relief." *Johnson* v. *Murzyn*, 1 Conn. App. 176, 179, 469 A.2d 1227, cert. denied, 192 Conn. 802, 471 A.2d 244 (1984).

because such a defect may be cured pursuant to Practice Book § 9-19.[12] *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 288, 914 A.2d 996 (2007); *Bauer* v. *Souto*, 277 Conn. 829, 839, 896 A.2d 90 (2006); *Hilton* v. *New Haven*, 233 Conn. 701, 721, 661 A.2d 973 (1995); but see *Fong* v. *Planning & Zoning Board of Appeals*, 212 Conn. 628, 637, 563 A.2d 293 (1989) ("[o]nly when the statute authorizing the appeal requires a designated person to be made a party does the failure to do so constitute noncompliance with its terms and thus involve subject matter jurisdiction"). The court, therefore, properly denied the defendant's motion to dismiss for lack of subject matter jurisdiction.

"The principles that govern motions to open or set aside a civil judgment are well established. A motion to open and vacate a judgment . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Housing Authority* v. *Goodwin*, 108 Conn. App. 500, 506, 949 A.2d 494 (2008). "A stipulated judgment, although obtained through mutual consent of the parties, is binding to the same degree as a judgment obtained through litigation. . . . It necessarily follows that if the judgment conforms to the stipulation it cannot be altered or set aside without the consent of all the parties, unless it is shown that the stipulation was obtained by fraud, accident or mistake." (Internal quotation marks omitted.) Id., 506–507.

The defendant does not claim that she entered into the stipulation as the result of fraud, accident or mistake. Rather, the defendant notes that Joseph Kopylec

[12] Practice Book § 9-19 provides in relevant part: "[N]o action shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and summoned in, and parties misjoined may be dropped, by order of the judicial authority, at any stage of the cause, as it deems the interests of justice require." See also General Statutes § 52-108.

was not served with the plaintiff's complaint and points to the court's September 19, 2005 order of stay determining that he "is a necessary and indispensable party to the full resolution of the dispute . . . ." Then, invoking our rules of joinder, the defendant argues that principles of due process require that the stipulated judgment be opened and the plaintiff's case remanded for a trial because an indispensable party must be provided with notice and an opportunity to protect his property interest. We are not persuaded.

We recognize that our Supreme Court has stated that "a court may refuse to proceed with litigation if a claim cannot properly be adjudicated without the presence of those indispensable persons whose substantive rights and interests will be necessarily and materially affected by its outcome. . . . Parties have been termed indispensable when their interest in the controversy is such that a final decree cannot be made without either affecting that interest or leaving the controversy in such condition that its final disposition may be inconsistent with equity and good conscience. . . . Joinder of *indispensable parties* is mandated because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]." (Citations omitted; emphasis added; internal quotation marks omitted.) *Hilton* v. *New Haven*, supra, 233 Conn. 722–23.

Judgment, however, was rendered against the defendant pursuant to *an agreement* that she entered into with the plaintiff. "[A] stipulated judgment is not a judicial determination of any litigated right . . . [and] may be defined as a contract . . . . The essence of the judgment is that the parties to the litigation have *voluntarily entered into an agreement* setting their dispute or disputes at rest . . . ." (Emphasis added; internal quotation marks omitted.) *Ahmadi* v. *Ahmadi*, 294 Conn. 384,

389–90, 985 A.2d 319 (2009). Moreover, "each cotenant holds an undivided partial moiety or interest in the *whole* of their property. [T]he common characteristic of all such interests [is that] the owners have no separate rights as regards any distinct portion of the land, but each is interested, according to the extent of his share, in every part of the whole land. . . . A consequence of this form of ownership is that a cotenant can freely sell, lease or mortgage [her] own undivided interest in the whole of the property to a third party without the consent of the remaining cotenants." (Citation omitted; internal quotation marks omitted.) *Ianotti* v. *Ciccio*, 219 Conn. 36, 41, 591 A.2d 797 (1991).

Thus, the defendant, as the owner of an undivided interest in the whole of the property, had a right to voluntarily restrict *her* use of it pursuant to an agreement with the plaintiff.[13] Joseph Kopylec was not a party to the stipulated judgment, and since "[a] cotenant may not . . . act unilaterally so as to bind the interest of his cotenant"; id.; the stipulated judgment was not enforceable against him when it was entered. See also 20 Am. Jur. 2d 134, Cotenancy and Joint Ownership § 3 (2005) ("one cotenant cannot ordinarily bind fellow cotenants by contracts with third persons, unless duly authorized to do so, or unless the cotenants later ratify this act"). Accordingly, the entry of stipulated judgment was not inconsistent with equity and good conscience. See *Hilton* v. *New Haven*, supra, 233 Conn. 722–23.[14]

---

[13] We note that this conclusion is consistent with the court's September 19, 2005 order finding that "Joseph Kopylec is a necessary and indispensable party to the full *resolution* of the dispute . . . ." (Emphasis added.) Thus, the stipulated judgment cannot be *enforced* against Joseph Kopylec until he is joined in any enforcement proceeding.

[14] We pause to stress that the court's September 19, 2005 order remains in effect and has stayed all substantive proceedings related to the enforcement of the stipulated judgment until Joseph Kopylec is joined as a party. This case has languished in the trial court for almost eight years without resolution and could have been brought to a conclusion long ago, saving an enormous amount of scarce judicial and party resources, had the plaintiff simply heeded what the court told Joseph Kopylec at the June 9, 2003

The court, therefore, did not abuse its discretion in denying the defendant's motion to open the stipulated judgment and remand for a trial.[15]

II

AC 31134

In this related appeal, the defendant appeals from the denial of her motion for contempt. On appeal, the defendant claims that Judge Hadden erroneously interpreted a previous order of the court, entered by Judge Pittman on September 19, 2005.

The order at issue, entered on September 19, 2005, states: "Because, as stated in its memorandum of decision dated July 29, 2005, the court has determined that Joseph Kopylec is a necessary and indispensable party to the full resolution of the dispute over the use of the property at 944 Totoket Road in the Northford section of North Branford, the court hereby stays all discovery and other substantive proceedings related to the enforcement of the previous orders of this court until such time as Joseph Kopylec is joined as a party to this action." On December 23, 2008, the defendant filed a motion for contempt against the plaintiff, alleging that the failure to join Joseph Kopylec was a "willful and continual failure to comply with the order of the court, *Pittman, J.*, entered [September 19, 2005]." After a hearing, Judge Hadden denied the defendant's motion on April 23, 2009. The defendant then filed a motion to reconsider, which the court denied on May 15, 2009.

hearing: "[I]f you fail to comply, if the matter comes to court for further findings in contempt you'll be cited in as a party and be facing contempt of court."

[15] In light of this determination, we need not reach the defendant's claim that the court improperly concluded that the doctrine of privity would bind her husband, Joseph Kopylec, to the stipulated judgment she entered into with the plaintiff.

The defendant contends that the court erroneously determined that the September 19, 2005 order did not direct the plaintiff to join Joseph Kopylec to the action. Specifically, the defendant argues that portions of the transcripts from the hearing held before Judge Pittman on September 19, 2005, reveal what the court "actually ordered," and because Judge Hadden did not allow the defendant to submit a brief or present witness testimony at the hearing on April 23, 2009, he reached an erroneous conclusion.[16] We disagree.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in failing to find that the actions or inactions of the [plaintiff] were in contempt of a court order." (Internal quotation marks omitted.) *Adamo* v. *Adamo*, 123 Conn. App. 38, 49, 1 A.3d 221, cert. denied, 298 Conn. 916, 4 A.3d 830 (2010). An examination of the April 23, 2009 transcript reveals that the court denied the defendant's motion because it determined that "Judge Pittman's [September 19, 2005] order does not order the plaintiff to bring in [Joseph] Kopylec as a party." Thus, to determine if the court abused its discretion in denying the defendant's motion for contempt, we must review the court's construction of the September 19, 2005 order.

"The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are

---

[16] We note that the defendant has failed to set forth her claim with the preferred degree of clarity. In fact, the defendant's brief to this court is rather remarkable in its near complete failure to comport with even the basic requirements of Practice Book § 67-4. The brief lacks a statement of the issues and any statement of the standard of review. In addition, because the defendant has failed to cite to any legal authority in support of her argument, her brief also lacks a table of authorities. "[W]e will nonetheless review all claims which are fairly presented, or at least, reasonably discernible, upon the record before us." (Internal quotation marks omitted.) *McCook* v. *Whitebirch Construction, LLC*, 117 Conn. App. 320, 322 n.3, 978 A.2d 1150 (2009), cert. denied, 294 Conn. 932, 987 A.2d 1029 (2010).

to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, *if necessary*, the surrounding circumstances." (Emphasis added; internal quotation marks omitted.) *JSA Financial Corp.* v. *Quality Kitchen Corp. of Delaware*, 113 Conn. App. 52, 62–63, 964 A.2d 584 (2009). We previously have determined that there has been no abuse of discretion when "[t]he plain language of the judgment does not support the defendant's claim." *Defeo* v. *Defeo*, 119 Conn. App. 30, 33, 986 A.2d 1099 (2010).

We conclude that Judge Hadden did not abuse his discretion. Judge Pittman's order on September 19, 2005, imposed a stay on all enforcement proceedings "until such time as Joseph Kopylec is joined as a party to this action." Judge Pittman's order does not command the joinder of Joseph Kopylec; rather it stops all enforcement action "until such time as" he is joined as a party. Moreover, there is a conspicuous lack of language directing a specific party to undertake the joinder of Joseph Kopylec. We decline the defendant's invitation to examine the transcripts of the September 19, 2005 hearing to ascertain an alleged actual meaning that is in direct conflict with the plain language of the order.

The judgments are affirmed.

In this opinion the other judges concurred.